JONES VS. JONES, Adm'r.

TRUST ESTATES: *Not barred by limitations, etc.*
When an administrator takes possession of the property of an estate, he becomes a trustee for the widow and next of kin, and no lapse of time can be pleaded, in bar, as between him, as such trustee, and the *cestui que trust* or beneficiaries, though the statute of limitations may be pleaded as against creditors.

CHANCERY: *Jurisdiction in matters of dower.*
The probate courts of this state are invested with jurisdiction in matters of dower; but courts of chancery are not thereby ousted of their ancient jurisdiction in such matters.

DOWER: *Marriage prerequisite to, etc.*
Marriage is a prerequisite to the right of dower, and, in a suit for dower, where the fact of marriage is denied, proof of an actual marriage, either under the forms and solemnities prescribed by the statute, or as prescribed by the common law, is necessary.

APPEAL from *Sharp* Circuit Court.
Hon. ELISHA BAXTER, Circuit Judge.
*A. H. Garland*, for appellant.
*U. M. Rose*, for appellees.

BENNETT, J. The appellant filed her bill in the circuit court below as the widow of Elbert Jones, deceased, to com-

pel W. C. Jones, his administrator, to render true and proper accounts of his estate, and to have dower set apart to her as the widow of the deceased.

The bill charges the marriage of her and the deceased, in Tennessee, in the year 1831; the death of Elbert Jones in 1856; a large estate of lands and personalty; administration on the same by W. C. Jones, and then several matters of waste and misapplication of the funds of the estate; errors and frauds in the accounts of the administration.

The answer of the administrator denies, in the usual manner, all charges of error, waste and fraud, and denies that appellant was ever married to deceased, and denies that appellant and Elbert Jones were ever husband and wife; pleads the statute of limitations, and asserts his right to the estate.

Upon the hearing, the court dismissed the bill, from which order of dismissal an appeal has been granted.

The order of dismissal does not state for what reason the bill was dismissed: whether for want of jurisdiction, or because the action was barred by the statute of limitations; or, because the complainant was not the widow of Elbert Jones, or because the allegations of fraud, etc., were not made out by the proof.

That chancery courts have jurisdiction in matters affecting questions of dower has been well settled in the case of *Menifee v. Menifee*, 8 Ark., 9, and need not be further discussed here.

As to the question of the statute of limitations, we may say, no lapse of time is a bar to a direct trust, as between the trustee and *cestui que trust*. When an administrator takes possession of the property of an estate, he becomes a trustee for the widow and next of kin, and it would be unjust for the person who takes possession of the property of the intestate, under authority of law, to be at liberty, after more or less years

of possession, to set up the statute of limitations as a bar to the *cestui que trust.* Though the statute may be pleaded as against creditors, it can never be pleaded as a bar to the beneficiaries. 3 Johns. Ch., 214, 215; 10 Vesey, 93; 1 Johns. Ch., 316.

Was Delilah Jones the widow of Elbert Jones? This inquiry is an important one, as she is asking the court to award her dower, and marriage is an essential prerequisite to the right of dower. In order to entitle a woman to this provision, she must answer the description of a lawful wife. 1 Scribner on Dower, ch. 3, sec. 1. Marriage, under our statute, is considered in law a civil contract, to which the consent of the parties, capable in law of contracting, is necessary. Marriage has been regulated by legislative enactments, by defining the character and relations of parties who may marry, so as to prevent a conflict of duties and to preserve the purity of families; by prescribing the solemnities by which the contract shall be executed, so as to guard against fraud, surprise and seduction; by annexing civil rights to the parties and their issue, to encourage marriage and to discountenance wanton and lascivious cohabitation; by declaring the causes and the judicature for rescinding the contract, when the conduct of either party and the interest of the state authorize dissolution. A lawful marriage may be defined to be a contract made by parties authorized by law to contract, and solemnized in the manner prescribed by law. To constitute a lawful wife, there must have been a lawful marriage. It is generally considered, in the absence of any positive statute declaring that all marriages, not celebrated in the prescribed manner, shall be absolutely void, or that none but certain magistrates or ministers shall solemnize a marriage, any marriage regularly made according to the common law, without observing the statute regulations, would still be a valid marriage. 2 Greenleaf Ev.,

417; 2 Kent Com., 90, 91; Reeve's Dom. Rel., 196, 200, 290; *Parton v. Harvey*, 1 Gray, 119; *Londonderry v. Chester*, 2 N. H., 268; *Chiseldine v. Brewer*, 1 Har. & McH., 152; *Hantz v. Sealey*, 6 Binn., 405.

A marriage celebrated in any country, according to its own laws, is recognized and valid in any country whose laws or policy it may not contravene.

The proof of marriage, as of other issues, is either by direct evidence establishing the fact, or by evidence of collateral facts and circumstances from which its existence may be inferred.

The same strictness of proof is not requisite in civil cases as is required upon indictments for bigamy and other actions of a criminal character. In civil cases it is common to prove marriage by reputation, declarations and conduct of parties, and other circumstances usually accompanying that relation. It is competent to show conversations and letters addressing each other as man and wife; their appearing in respectable society, and their being received as man and wife; their observance of the customs and usages of society peculiar to the entry upon or subsistence of that relation; their cohabitation also as man and wife is presumed to be lawful until the contrary appears. A like inference is drawn by the acknowledgment and treatment of their children by them as legitimate.

The evidence of marriage may be rebutted by proof that any circumstances, rendered indispensably necessary by law to a valid marriage, were wanting. Thus it may be shown that either of the parties had another husband or wife living at the time of the marriage in question; or that the parties were related within prohibited degrees; or that consent was wanting, the marriage having been effected by force or fraud; or that one of the parties was at the time an idiot or *non compos mentis* or insane.

Having thus defined what constitutes a lawful marriage and a lawful wife, and what proof may be adduced to substantiate it, as far as is applicable to the case at bar, we will proceed to make the application, and endeavor to ascertain with as much certainty as possible, whether Delilah Jones was the lawful wife of Elbert Jones at the time of his death. Her bill of complaint alleges: "That the said Elbert Jones, deceased, and your oratrix (Delilah Jones) were married in the state of Tennessee, about the year 1831." It is nowhere stated in what town or county of Tennessee the marriage took place, but she states she lived with Jones as his wife for some fifteen years. The answer of W. C. Jones, administrator, charges "that said Delilah Jones was never lawfully married to the said Elbert Jones, as stated in said complaint; that, at the time of said alleged and pretended marriage, said Elbert Jones had a lawfully married wife named Matilda Jones, living in Tennessee, from whom he was not divorced, and who continued to be his lawful wife for more than twelve years after the time said Elbert and Delilah commenced cohabiting together." The proof introduced upon the issue was as follows: W. R. Holcomb testifies, that he "was acquainted with Mr. Elbert Jones during his lifetime. I know that he and complainant recognized each other as man and wife, and the neighbors recognized them as such. I have frequently heard them speak of their marriage in the state of Tennessee, during the old man's lifetime." W. M. Morgan testifies, "that he has been acquainted with the plaintiff for about 28 years, and was acquainted with Elbert Jones, deceased, from the year 1842 until his death, but does not know anything about their marriage; they lived together as man and wife, and were recognized as such by the neighbors, and I think they conducted themselves as man and wife." Isaac King testifies, "that he does not know anything of the marriage of Elbert Jones and

Delilah Jones, but they lived together as man and wife, and conducted themselves as such, and were recognized as such by their neighbors generally." John King testifies, " that he has known Elbert Jones and Delilah Jones for 20 or 25 years, but don't know anything about their marriage; they came here some twenty or. twenty-five years ago, and were recognized as man and wife." David Spurlock, testifies: " Have known Elbert Jones and Delilah Jones some 23 or 24 years. They lived together as man and wife what time I knew them, and conducted themselves as such. At a certain case before me, when I was justice of the peace, Elbert Jones said that Elbert T. Jones was his son; he was then living with Delilah Jones, the complainant." John Ogler testifies, " that when he came to this country, they, Elbert Jones and Delilah Jones were recognized generally by their neighbors as man and wife. In the year 1854–55, I was an acting and duly commissioned justice of the peace, and Elbert Jones swore out an attachment, and in the affidavit he swore that Mrs. Delilah Jones was his wife, and he recognized her as I would my wife, like you, Mr. Davidson, do yours, or like any other man would his wife." Elbert Jones testifies to the fact that Delilah Jones is his mother, and that Elbert Jones, during his lifetime, recognized him as his son, and Elbert Jones, Sr., always treated Delilah Jones as his wife. John G. Farman testifies, " that Elbert Jones always treated Delilah Jones as his lawful wife, and knew of Elbert Jones, during his lifetime, suing out an attachment for his wife upon her sole contract, and said at the time, he would not have done it if it had been on his own account, but it being his wife's, he felt it his duty to proceed as he did."

Upon the part of the defendant, James M. Jones testifies, " that he is acquainted with Elbert T. Jones and Delilah Jones, formerly Delilah Harris. Have known Mrs. Delilah Jones

since 1827 or 1828; at that time she was known as Delilah Harris. Elbert Jones, deceased, and Delilah Harris lived in my neighborhood until the fall of 1835, in company with Elbert Jones, deceased; but not as his wife. Elbert Jones, deceased, and his wife, Matilda Jones, separated about the year 1829, but they were never divorced.. Matilda Jones died about twelve or fifteen years after the separation. Have lived in Bedford county, Tennessee, since 1830.

The above is all the evidence introduced to prove or disprove the lawful marriage of Elbert Jones with Delilah Jones.

The evidence, on the part of the complainant, is but declarations and conduct of parties, and at most, but circumstantial evidence of marriage. The complainant does not endeavor to prove that her marriage was ever, in any manner, solemnized; or that there was any agreement between her and Elbert Jones to become man and wife. In a suit for .dower, it is clear that an actual marriage, either under the forms and solemnities prescribed by the statute, or as prescribed by the common law, is necessary. It is not one of those cases in which a man is estopped, on grounds of public policy, or private right from denying that he is married to a woman; as where a tradesman has trusted a woman on the faith of her being married to a man, who has held her out to the world as his wife. In such cases the law will not permit the truth to be proven, because it would do injustice and work a fraud. But here the person claiming to be the wife, assuredly has no higher equities than the relations of the deceased; for if, instead of being married, she lived with deceased as his concubine, it was her own fault, and she can blame herself alone.

The cohabitation and acts of Elbert Jones and Delilah Jones, although extending through many years, did not amount to marriage, but are facts from which a marriage might be inferred. They were circumstances on which to

ground a presumption of marriage, and on the other hand, might be met with other circumstances which would entirely overturn that presumption.

Delilah Jones says she was married to Jones in 1831, but does not state how or by whom she was married, but only shows acts of cohabitation and holding out to the world that they are man and wife. On the contrary, J. M. Jones, a brother of Elbert, says he was well acquainted with these parties, and in 1831, and several years afterwards, Elbert had a lawful wife living, by the name of Matilda Jones, from whom he was never divorced. No effort on the part of the complainant was made to overturn or weaken this evidence. It is positive, direct, conclusive.

If this was true, Elbert Jones could not have made Delilah Harris, or any woman, his lawful wife in any manner whatever, either by the forms of solemnization required by the statutes, by acts of cohabitation or otherwise. The proof of marriage must relate to the time alleged in the bill, viz., 1831; and if, at that time, Matilda Jones was the lawful wife of Elbert Jones, Delilah Jones could not have been. No evidence has been introduced to show that any subsequent marriage has been had; we are clearly of the opinion that Delilah Jones was not the lawful wife of Elbert Jones at the time of his death, and not being such, she cannot maintain her action of dower in his estate, or institute proceedings to inquire into errors or frauds on the part of the administrator, as it is not shown that she has any other interest in the estate except as a wife of the deceased.

Judgment affirmed.