FOUNTAIN *v.* FOUNTAIN.

Opinion delivered November 12, 1906.

1. DIVORCE—ALLOWANCE OF ALIMONY—SUFFICIENCY OF PROOF OF MARRIAGE. —Where, in a suit for divorce by a wife, the husband's answer denied the marriage, an allowance of alimony and attorney's fees to the wife was not improper where her testimony warranted a reasonable presumption that they had been legally married. (Page 483.)

2. MARRIAGE—PRESUMPTION.—Where a plaintiff in a divorce suit alleged and defendant denied that they had been lawfully married, plaintiff's direct testimony to the effect that the marriage was duly solemnized, supported by proof that they had cohabited as husband and wife for years and that defendant had publicly recognized plaintiff as his wife was sufficient, in a preliminary application for alimony, to' warrant a reasonable presumption of a lawful marriage. (Page 484.)

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Chancellor; affirmed.

STATEMENT BY THE COURT.

Appellee brought suit for divorce against appellant, alleging that she and appellant were married in Faulkner County in the year 1896; that they lived together as husband and wife until the 6th day of January, 1906, when appellant treated appellee in such manner as to render her condition in life intolerable. The complaint specifies some of the conduct of appellant towards her which it is alleged made her condition intolerable, but it is unnecessary to set this out. Appellee alleged that J. W. Fountain owned a certain lot in Argenta valued at $1,000, and that she and appellant owned jointly a lot on Military Heights valued at $100. Appellee asked for attorney's fee, temporary alimony, court costs, and for absolute divorce.

Appellant answered, denying the marriage and the conduct alleged and charging appellee with adultery. Appellee moved the court for temporary alimony and attorney's fees. Appellant resisted the motion. On this issue appellee testified that she was married to appellant in Faulkner County during the year 1896; that a justice of the peace performed the ceremony. The justice had some papers in his hand from which he read. She could not read, but knew a marriage license when she saw one, and knew that one of the papers was a marriage license. They stood up side by side. The justice asked them questions, and said they were man and wife. She lived with appellant as his wife for years, and until he drove her away. She never heard anything about not being his wife until the suit for divorce was brought. Appellant always introduced her as his wife; she had never been guilty of adultery. She had no means to prosecute the suit and nothing to live on. Other witnesses testified that appellant and appellee lived together for years as husband and wife; that he held her out as his wife, and always introduced her as such.

Appellant testified, among other things, that he was never married to appellee; that he had been living with her for four years, but that he was never married to her. He says he always introduced her as his wife, and never told any one until the suit for divorce was brought that she was not his wife. · It was shown that appellee owned an undivided half interest in a lot on Military Heights worth about $150, but it was not shown that appellee could or did realize anything from it.

There was proof on behalf of appellant by the county clerk of Faulkner County that the marriage records of that county did not show that any marriage license was issued to J. W. Fountain, appellant. There was proof that Fountain had married another woman in 1883, and that appellee had married another man in 1889, but there was no proof that the other woman whom Fountain married was not dead at the time of his alleged marriage with appellee, or that she had not been divorced from him. And there was no proof that the man whom appellee married had not been divorced from her.

The court adjudged that appellant pay $5 per month for

temporary alimony and $25 for attorney's fees. Appellant prosecutes his appeal from this order.

*Oliphint & Miles,* for appellant.

Before the court should make the allowance, the wife should be required to show merit in her case, and to do this, where the marriage is denied by verified answer, she would first have to show that there was a marriage, and the burden of proof is on her. 42 Fla. 362; 114 Ga. 590; 3 How. 242; 124 Cal. 389; 92 Ia. 722; 49 N. J. Eq. 102; 30 Ark. 76; 28 Ark. 21.

*W. C. Adamson,* for appellee.

1. The evidence of marriage required in an application for alimony need not amount to absolute proof. It is sufficient if it shows a fair probability that the wife will on the final hearing establish the marriage. 24 Ill. App. 165; 30 N. J. Eq. 76; 71 N. Y. 269; 50 N. Y. 184; 4 S. D. 305.

2. Admission of cohabitation, though the marriage was denied, was held sufficient for allowance of alimony. 1 Edw. Ch. (N. Y.) 265. Likewise alimony was allowed where the proof of marriage was evenly balanced, but the preponderance was in favor of cohabitation. 50 N. Y. 184. Proof of cohabitation, together with a recognition of plaintiff by defendant and his treating her in the presence of witnesses as his wife, is sufficient proof of marriage to entitle her to temporary alimony. 2 Abb. Pr. N. S. (N. Y.) 483. See also 4 H. & M. (Va.) 512; 19 Am. & Eng. Enc. Law, 1204.

WOOD, J. The majority of the court is of the opinion that the allowance of alimony and attorney's fees under the evidence is proper, regardless of whether a common-law marriage was shown or not. In the leading case of *Brinkley* v. *Brinkley,* 50 N. Y. 184, Chief Justice Folger, speaking for the court, after a careful and exhaustive review of authorities, English and American, reaches the conclusion that, "in all applications for temporary alimony and the expenses of the action, although there may be in the answer a general denial of the existence at any time of the marital relation, the court has the power, from the affidavits and other papers presented to it, to pass upon the question for the purposes of the application, and it is not bound down to the allegation of the complaint and the denial of the answer if other

papers or proof are submitted to it; and, though the denial of the answer, if standing alone, would bring the case within the rule that where no marital relation is admitted or proved there is no right of alimony, yet, if the matters contained in other papers or shown by legitimate proofs before the court make out in the judgment of the court a fair presumption of a fact of marriage, it has the power to grant alimony pending the action and expenses of the action." This is sound doctrine, and supported, we think, by the weight of authority.

In *Vincent* v. *Vincent*, 16 Daly (N. Y.), 535, it is said "that; to authorize an allowance of alimony *pendente lite,* the existence of the marital relation must be shown to the satisfaction of the court, is a settled rule in the jurisprudence of this State. But, as in other preliminary contestations, the fact is not to be established with the clearness and conclusiveness exacted of proof as the basis of a final adjudication upon the rights of the litigant parties." See other cases cited in brief of appellee.

These principles, applied to the facts of this case as developed on behalf of the appellee, leave no question as to the correctness of the court's ruling.

Appellee follows up the allegation of marriage by her own evidence that the ceremony was performed by one authorized to solemnize it, and then shows by affidavits of others, and even by appellant, the constant cohabitation of himself and appellee for years, as husband and wife. These facts warrant the reasonable presumption that appellant and appellee were married, as appellee swears they were, and show a strong probability that appellee would succeed on the final hearing in establishing the truth of the allegation of her marriage to appellant. Appellee also establishes in the same way the reasonable probability that there is no truth in the charge of adultery against her.

Where marriage is alleged in the complaint and denied in the answer, it is the rule in some jurisdictions that the fact of marriage must be established by the plaintiff by a preponderance before an order of alimony can be obtained. *Hite* v. *Hite,* 124 Cal. 389, 57 Pac. 227; *McKenna* v. *McKenna,* 70 Ill. App. 340.

Even if this were the rule in our State a finding that appellee had met its requirements in this case would not be clearly against the weight of the evidence.

HILL, C. J., and McCULLOCH, J., dissent from the view that the testimony is sufficient to support the allowance as expressed in the opinion. HILL, C. J., concurs in the judgment for the reason that in his opinion the proof shows a common-law marriage, which is good in this State. I am of that opinion for the following reasons:

The proof is ample to show a common-law marriage under the rule announced by this court in *Jones* v. *Jones,* 28 'Ark. 19. The parties, who were eligible, according to the evidence for appellee consented to enter into the marital relation, and in addition the ceremony was solemnized by one duly authorized. After this the married state was publicly assumed by them, the parties appearing "before the world" as husband and wife. In *Jones* v. *Jones, supra,* this court said: "It is generally considered, in the absence of any positive statute declaring that all marriages, not celebrated in the prescribed manner, shall be absolutely void, or that none but certain magistrates or ministers shall solemnize a marriage, any marriage regularly made according to the common law, without observing the statute regulations, would still be a valid marriage." While this doctrine was announced before many of the statutory regulations safeguarding marriage, as found in chapter 106 of Kirby's Digest, were enacted, it is still the rule, for there is no provision in the law that the failure of the parties and others having certain duties to perform under the statute to comply with those duties will render the marriage void.

A marriage good at the common law is good under our statutes, for there is nothing in them prohibiting such marriages or declaring them void, or prescribing that a failure to comply with the provisions of the statutes upon marriages shall render the marriage contract void. Punishment is meted out to those who fail to observe the salutary statutory regulations concerning marriage in some other way than by annulling the contract of marriage, where it is entered upon by parties duly qualified, and in a manner authorized at the common law. In addition to authorities cited in *Jones* v. *Jones, supra,* upon this subject, see Rodgers on Dom. Rel. § 89; Bishop on Marriage, Divorce and Sep. § 423; *Meister* v. *Moore,* 96 U. S. 76.

The decree ordering temporary alimony and attorney's fees is affirmed.