WILLIAMS *v.* BOARD OF DIRECTORS OF CARDEN'S BOTTOM LEVEE DISTRICT NO. 2.

Opinion delivered July 3, 1911.

1. LEVEES—AUTHORITY OF ENGINEER.—Where a levee district contracted for the erection of six concrete culverts, to be erected according to specifications under the direction of its chief engineer, and stipulated that the decision of the engineer should be conclusive, the assent of the engineer that three of the culverts should be built of rubble masonry was not binding upon the levee district, as he had no implied authority to alter the terms of the contract. (Page 172.)

2. APPEAL AND ERROR—CONCLUSIVENESS OF COURT'S FINDINGS.—The findings of fact of the trial court, sitting as a jury, are as conclusive as the verdict of a jury. (Page 174.)

Appeal from Yell Circuit Court; *Hugh Basham,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellants sued appellee to recover an amount alleged to be due for the building of six culverts. Appellee defended on the ground that the work was not done according to the contract, and that the work as done was defective. The work

was undertaken under a contract between appellants and appellee, which is as follows:

"Witnesseth: That, for and in consideration of the payment and covenants hereinafter mentioned to be made and performed by the said board of directors, the said party of the first part hereby covenants and agrees to construct and finish, to the satisfaction and acceptance of the chief engineer of said levee board, six reinforced concrete culverts, located as follows:

"2 48″ culverts in upper levee.

"1 72″ culvert at steel bridge.

"3 48″ culverts along the Petit Jean River.

"Said party of the first part to set the steel doors (to be furnished by the levee board) and have the same in working order.   All work to be done in accordance with the plans, blue prints and specifications attached hereto, which are made a part of this contract.   Work to commence within ten days after the date of sale of the levee bonds of the above-named district;   work to be completed within sixty days thereafter. And the said levee board agrees to pay to the said first party, for completing the contract according to its terms, the following amount: ten and 50–100 dollars per cubic yard in place. (This price to include setting steel doors.)   It is expressly understood that the prices herein stipulated to be paid refer to final and accurate measurements of the work embraced in this contract.   And it is further understood that the quantities shown on the attached blue print are only approximate. and may be varied at the discretion of the levee board through its authorized engineer.   And when all the work embraced in this contract has been completed agreeably to the specifications, and according to the directions of the chief engineer, a final estimate shall be accurately made by said engineer, and the amount due said first party shall be paid to Williams-McQuary Company upon their giving, under seal, a release to the said board of directors from all claims or demands whatsoever, growing in any manner out of this agreement.   And it is mutually agreed and distinctly understood that the decision of the chief engineer shall be final and conclusive in any dispute which may arise between the parties to this agreement relative to or touching the same."

The specifications provided in addition for the size of the crushed rock and the proportion of sand, cement, and crushed rock or gravel that was to be used in the work. The first three culverts that are mentioned in the contract were constructed of concrete. It is the contention of appellants that they constructed them according to the terms of the contract, and that they were accepted by appellee. On the other hand, appellee contends that the culverts had cracks in them, and were otherwise defective; and that it did not accept them. In regard to the three culverts along the Petit Jean River, it is admitted that they were not constructed of concrete, but were what is known as uncoursed rubble masonry, and that the stones used varied in size from a man's fist to as large as a water-bucket. Thomas Boles was designated as chief engineer of the district, and this departure from the terms of the contract was authorized by hi 1. Boles and appellants occupied the same office in the city of Fort Smith, Ark., but neither was interested in the business of the other. D. R. Williams, one of the appellants testified that he was manager of the firm; that the first three culverts were constructed according to the terms of the contract; that there was no defect in either the work or the materials used; and that the board accepted the culverts. Williams admits that the three culverts along the Petit Jean River were rubble stone masonry, but says that this change was authorized by Boles, the chief engineer; that Lewis Branson, one of the members of the board, told him that he was employed as inspector; and that he knew that these culverts were being constructed of boulders; that other members of the board came along, and saw that the culverts were being made of boulders, and made no objection thereto; that the boulder culverts were as good and as serviceable as concrete culverts, and that they cost nearly or quite as much. Other evidence was introduced by appellants to corroborate the testimony of Williams. On the other hand, Lewis Branson, one of the members of the levee board, testified that the three concrete culverts had cracks in them, and were otherwise defective; that he did not give his approval to the contractors of the work done on the culverts along the Petit Jean River, but, on the contrary, told them that it was not the kind of work the board was looking for. R. E. Cole,

one of the members of the levee board, testified that the board discovered on the 24th day of September, 1909, that the three culverts on the Petit Jean River had been built of boulders; that they were informed of this fact by Branson, and were surprised to hear it; that they were then done with the exception of the last one, and they had the foundation of it laid; that he and some of the members of the board went down there and told the plaintiff D. R. Williams that they were afraid of the whole thing, and were surprised at him placing work of that kind in there; that they had never contracted for that class of work, and would never have contracted for it at any price. On November 17, 1909, the board formally passed a resolution declining to accept the culverts along the Petit Jean River, and notified appellants in writing of their refusal to accept them. The final report and certificate of Thomas Boles as chief engineer was made in writing to the board on January 18, 1910. In his report he states that, on account of the difficulty in getting the gravel from the Arkansas River to the site of the culverts along the Petit Jean River, these culverts were built of hard smooth boulders imbedded in a thin mortar, that all the voids between the stones were filled with this mortar, and that the resulting structure was as good as, if not better than, the concrete called for by the specifications; that the change from the specifications was necessary to meet local conditions, and was authorized by him. The local conditions were that it was difficult to get a rock crusher to the place where the culverts were being constructed; that the cost of this construction was little, if any different from that of concrete, and that he saw no necessity for making any deductions therefor. On the other hand, appellee introduced Alfred M. Lund, a civil engineer, who had made an examination of the culverts, and who testified that the rubble nasonry culverts were not according to the specifications, and were built at a much less cost than could have been done had the specifications been complied with; that there were cement cracks in the culverts, and that, if the culverts had been built in accordance with the plans and specifications, they would not have been as liable to have produced the cement cracks; that culverts of uncoursed rubble masonry are not classed as concrete culverts; that the masonry cannot be reinforced to give it strength as could be

done in concrete; that it would be impractical to reinforce it with steel wire in the same manner as in concrete. Other evidence was introduced by appellee to show that the rubble stone or boulder culverts were not as good for the purposes for which they were intended as those made of concrete.

The case was tried before the court, sitting as a jury. The court found as follows:

1.  That appellee accepted the first three culverts named in the contract, and should pay the contract price therefor.

2.  That appellee did not accept the three culverts built along the Petit Jean River.

3.  That appellants departed from the specifications in the construction of the rubble stone culverts built along the Petit Jean River, and that appellee was, on that account, not bound to accept the same.

4.  That the final estimate given by Thomas Boles, engineer, and his acceptance of the work were not binding on appellee.

5.  The balance due appellants on said first three named culverts with the interest accrued was $523.85.

To reverse the judgment rendered in favor of appellee, appellants have duly prosecuted this appeal, and appellee has prosecuted a cross appeal.

*Youmans & Youmans,* for appellants.

1.  Under the contract the engineer was the agent of the appellee, and it is bound by his directions given to appellants and by his acceptance of the work.

The plain purpose of the contract was that the engineer should have complete control. When the work was done "to the satisfaction and acceptance" and "according to the directions" of the engineer, there was a sufficient compliance with the requirement that the work was to be done in accordance with the plans, blue prints and specifications. 57 N. Y. 669; 17 N. Y. 173; 36 N. Y. 388; 44 N. Y. 143; 132 N. Y. 415; 144 N. Y. 63; 181 Pa. St. 530.

The engineer acted in two capacities, *i. e.,* as employee and agent of appellee, and as arbiter between the parties. As such agent, appellee was bound by all that he did within the apparent scope of his authority. 154 Fed. 772; 66 Md. 42, 4 Atl. 903; 88 Ark. 223; 73 Tex. 488.

2. The proof is undisputed that the work was performed (*a*) according to the directions of the engineer, (*b*) to his satisfaction and acceptance, (*c*) that he issued his final estimate to appellants, and (*d*) that he decided the points in dispute between appellants and appellee in favor of the former. Such being the case, his decision must be taken as "final and conclusive" unless overcome by evidence of fraud or of such gross mistake as would necessarily imply bad faith or a failure to exercise an honest judgment. 48 Ark. 522; 68 Ark. 185; 79 Ark. 506; 83 Ark. 140; 88 Ark. 213; 97 U. S. 398; 98 U. S. 100; 109 U. S. 613; 114 U. S. 549; 138 J. S. 185; 175 U. S. 602; 205 U. S. 298; 74 Fed. 709; 154 Fed. 772.

3. The court did not find, and the evidence does not justify a finding of, fraud, collusion or failure to exercise an honest judgment, or such gross error as to imply bad faith.

4. The conduct of the board was equivalent to an acceptance.

5. The culverts were completed in substantial compliance with the terms of the contract. There was no wilful or intentional deviation from the specifications on the part of appellants. They, having done the work as they were instructed to do it, and that work being pronounced good by the engineer, are entitled to recover. 67 Ark. 219; 15 Pa. St. 151; 154 Fed. 772; 132 N. Y. 598; 181 Pa. St. 530.

*Bullock & Davis,* for appellee.

1. As to the culverts constructed of concrete, the court's finding that they were accepted by the appellee is supported by the evidence, but its finding and judgment that appellee was bound to pay the contract price therefor is not supported by the evidence, since the undisputed evidence is that they were constructed of material deficient in strength and cheaper than called for in the contract, resulting in the destruction of one of them, and extra work to amend defects in the others. Under the rule of substantial performance or acceptance as applied to these culverts, damages should have been allowed appellee of a sum equal to the cost of making them conform to the specifications. 64 Ark. 34, 38.

2. The court's finding that the culverts constructed of masonry were not accepted by appellee, and that it is not liable therefor is fully sustained by the evidence.

The contention that only two things are necessary to appellant's recovery (*a*) that the work was done under direction of the engineer, (*b*) that the engineer accepted the work and issued his final estimate as conclusive, cannot be sustained in the face of the contract. The engineer had no right nor authority to change the contract. Appellee is not bound by his direction to appellants to change, or his acquiescence in their changing, the materials of which the culverts were to be constructed. 108 Ill. 151; 105 Cal. 199; 38 Pac. 740; 105 Cal. 114; 38 Pac. 635; 6 Cyc. 55; 77 Hun. (N. Y.) 337; 50 N. Y. 145. The engineer's decision is not binding because he exceeded the authority conferred on him in the contract. It is void. 88 Ark. 213, 222, 224; 121 Pa. St. 401, 15 Atl. 636, 639, 640; 1 Pa. Super. Ct. 386; 13 Ill. 147; 15 Ill. 49; 25 Am. & Eng. R. Cas. 265. The certificate of the engineer is not binding unless it shows on its face his determination in the contractor's favor of all the facts made conditions precedent by the contract. 3 Page on Contracts § 1464; 87 Mo. App. 473; 29 S. W. 1048. The power of an architect or engineer to bind the employer depends upon the power conferred upon him by such employer either in the building contract with the contractor or in the contract of employment of such architect or engineer. An architect or engineer has not, by virtue of his position, general power to pass upon questions of fact, and thereby to conclude his employer or to modify terms in the contract already entered into. Page on Contracts, § 1465; 179 Mass. 439; 156 Mass. 344; 31 N. E. 288; 113 Ga. 501, 38 S. E. 983. See also 13 Ill. 147; 65 Tex. 685; 88 Ind. 460; 11 Gratt. 676; 97 U. S. 398; 109 U. S. 618; 34 Neb. 385, 51 N. W. 854; 49 S. W. 278.

HART, J., (after stating the facts.) 1. The contract called for the construction of six reinforced concrete culverts. It is admitted that the first three were constructed of concrete, and that the last three were of rubble masonry. There is no dispute between the parties but that this was a change from the terms of the contract, and that such change was authorized by the chief engineer. It is contended by counsel for appellant that the contract authorized the chief engineer to make this change. On the other hand, it is insisted by counsel for appellee that the contract gave the engineer no such

authority. Our own cases establish the doctrine that, unless expressly authorized to do so by the terms of the contract, an engineer or architect has no power to alter, change or modify the contract between the parties, and that his certificate, after he has so changed or modified the contract, stating that the work has been completed according to the contract, will not bind the parties. *Boston Store* v. *Schleuter*, 88 Ark. 213, and cases cited. Wait, in his work on Engineering and Architectural Jurisprudence, in speaking of the powers of architects and engineers, said: "An engineer is an agent with special power simply to do engineering and to superintend and direct the work. Unless specially conferred, he has no power to contract or to vary the terms of the parties' agreement. He can create no new obligations not embraced by the contract." Sec. 371. Again he says: "It is usual to constitute the engineer a referee as to the meaning of the plans and specifications, which are his own invention and handiwork, a certain construction of which is necessary to the proper erection and completion of the works. His powers can not be enlarged by implication, but they will be confined strictly within the terms of the contract." Sec. 402. In the case of *Boston Store* v. *Schleuter*, *supra*, the architects were, according to the terms of the contract "at liberty to make any deviation from or alteration in the plan, form, construction, detail and execution of the work." In this respect it is different from the present case. The present contract provides that the contract shall be completed agreeably to the specifications and according to the direction of the chief engineer. It will be noted that the contract does not give the engineer any power to change, alter, or modify the contract between the parties; and, this being true, his certificate, after he has changed the contract, that the work has been completed according to the contract will not bind the parties. The clause in the contract just referred to does provide that the work shall be done according to the directions of the chief engineer, but it also provides that the work shall be done agreeably to the specifications. By which is meant that the engineer should superintend and direct the work according to the specification provided for by the contract and made a part of it. Again, it is provided in the contract "that the decision of the chief engineer shall be final and conclusive in any

dispute which may arise between the parties to this agreement relative to or touching the same." By this is meant that any disagreement arising out of the contract or specifications as to the kind or quality of work required thereby should be decided by the engineer, and that his interpretations hould be conclusive between the parties. There is no dispute, however, between the parties as to what any provision of the contract means, and the whole controversy between them is as to the power of the engineer to change the terms of the contract. This he had no power under the terms of the contract to do. The parties contracted for reinforced concrete culverts. The engineer changed the contract in this respect and permitted the contractors to construct rubble masonry culverts. The testimony on the part of appellee tended to show that the culverts made of boulders were less expensive and not as good for the purposes for which they were intended as those made of reinforced concrete. Moreover, the parties had a right to provide for the kind of culverts they wanted, and we hold that, under the authority given him by the contract in question, the assent of the engineer to the change in the contract was not binding upon the appellee. The acceptance by the engineer of a different class of work from that contracted for did not bind the board to pay for it.

2. It is contended by counsel for appellant that the board accepted these boulder culverts, and should pay for them. They introduced testimony tending to show that Branson was inspector of the levee board; that he knew that these culverts were being constructed out of boulders, and assented thereto. Even if it can be said that Branson had authority to act for the board, his testimony shows that he did not acquiesce in the ·change made, but on the contrary told the contractors that it was not the kind of work they were looking for. Cole testified that the board did not know anything about the change until the 24th day of September, at which time all of the culverts except one were completed. He says that he at once notified the appellants of their refusal to accept the change.

The court, sitting as a jury, found that there had not been a substantial compliance of the contract by appellants, and that appellee did not accept the work, and there was evidence to support the finding. *Fitzgerald* v. *LaPorte*, 64 Ark. 34.

The question whether appellants were entitled to a *quantum meruit* is not raised by appellant. It may be said, however, that, if such contention were made, the case was not tried on that issue, and there is not sufficient evidence in the record from which a correct finding in that respect could have been made by the court. An instructive case on this question is that of *Foeller* v. *Heintz*, (Wis.) 24 L. R. A. (N. S.) 327, and case note at p. 348.

3. On the cross appeal of appellee but little need be said. It is sufficient to say that the case was tried by the court sitting as a jury, and it is well settled that the finding of fact made by a court is as final on appeal as the verdict of a jury; that is to say, if there is any evidence to support it, it will not be disturbed. We think that the evidence was sufficient to support the finding of the court that the levee board accepted the first three culverts which were built of concrete. This being true, appellants are entitled to recover the contract price therefor.

The judgment will be affirmed.

KIRBY, J., dissents.