GOSET v. GOSET.

## Opinion delivered March 9, 1914.

1. APPEAL AND ERROR—FINDINGS OF TRIAL COURT.—When there is substantial evidence to sustain the findings of fact by the trial court sitting as a jury, such findings will not be disturbed, and it is the duty of the appellate court, in passing upon the issue of fact, to indulge the strongest inference in favor of the finding, that the evidence will warrant. (Page 53.)

2. HUSBAND AND WIFE—PROOF OF MARRIAGE.—Evidence held sufficient to show that appellant and one A. had been married and had never been divorced, and that appellant was legally married to A. at the time of her alleged intermarriage with one G. (Page 53.)

3. HUSBAND AND WIFE—ABANDONMENT FOR FIVE YEARS.—Evidence held insufficient to show an abandonment of the wife by the husband for a period of five years, so as to make a subsequent marriage between the wife and another man, valid, under Kirby's Digest, § 5178. (Page 55.)

4. HUSBAND AND WIFE—VOID MARRIAGE.—The marriage of a man and a woman, when one of them has a husband or wife by a prior marriage, who is then living and undivorced, is void and not merely voidable, and being a nullity, no decree is necessary to avoid the same. (Page 56.)

5. MARRIAGE—LEGALITY—PRESUMPTION.—When a woman contracts a second marriage while her first husband is alive, it will be presumed, in favor of the validity of the second marriage, that the first marriage was legally dissolved before the second was entered into, by divorce or death of the former husband, but this presumption is overcome by proof that the former husband is alive and residing in the State, coupled with the absence of any proof of a divorce. (Page 56.)

6. MARRIAGE—INVALIDITY.—The evidence of a valid marriage may be rebutted by proof that any circumstance rendered indispensibly necessary by law to a valid marriage, is wanting. (Page 56.)

Appeal from Scott Circuit Court; *Daniel Hon,* Judge; affirmed.

### STATEMENT BY THE COURT.

The appellant filed her petition in the probate court of Scott County against appellee as the administrator of the estate of John Goset, deceased, for an allotment of dower out of that estate. The answer denied that the appellant was the widow of John Goset; denied that she

was lawfully married to John Goset, as alleged in her petition.

On appeal to the circuit court the cause was tried before the court sitting as a jury, and after hearing the evidence the court found as follows: "That the petitioner herein, Lucretia Goset, is not the widow of John Goset, deceased, having never been legally married to him, and that she has a living husband from whom she has never been divorced, and that the alleged marriage of her to John Goset, deceased, is void and of no effect, and that she is not entitled to any part of the estate of John Goset, deceased."

The testimony upon which the court based this finding is substantially as follows:

The appellant testified that she was the widow of John Goset, who died in Mansfield, Scott County, on the 11th of December, 1911. She was married to Goset in the town of Mansfield on the 20th day of September, 1905. She introduced in evidence the marriage license and certificate, which were in regular form and duly recorded. She resided with Goset continuously from the date of their marriage until his death. Before her marriage to Goset she had married Chas. H. Abbott, near Austin, Texas, in 1892. They moved to Arkansas and resided here until the winter or spring of 1896 or 1897. They then moved to Texas and remained there awhile; then went to Colorado, and then to Mexico. Her husband was in bad health and they were traveling around for his health. They got out of money and agreed that appellant should go to live with her mother, near Austin, Texas, until her husband should get better and obtain employment. She left him in Old Mexico in 1899, and went to her mother's. Abbott wrote her from Old Mexico in January, 1900, that he was going to the Philippines. She introduced the letter, in which he stated that he was going "to make a stake or go to the devil;" that "this is my last trial." "If," the letter says, "I make, I will come back fixed; if not, I will die trying." This

was the last time she had heard from him, and she was satisfied that he was dead.

She remained at her mother's until the fall of 1902, when she returned to Huntington to hunt him. He belonged to the Masonic lodge at Huntington and had lived there before she married him. She requested the master of the lodge to help her find him. He did so. He wrote several letters to the prominent people in Old Mexico and elsewhere who had known him, and they answered that he had gone and they did not know where he was, if alive. These letters were written to Mr. Rogers and he turned them over to appellant. Rogers never heard from him.

In 1903 she commenced keeping a boarding house. She made diligent inquiry, and, as above stated, had not heard from him since he wrote her a letter from Old Mexico in January, 1900. She never got a divorce.

The appellee testified that he was the administrator of the estate of John Goset, deceased, who was his father. Appellant told appellee that her former husband, Abbott, had died of consumption. Appellee, in 1909, had seen a letter that C. H. Abbott had written to appellant. The letter was shown appellee by his father, who took it from appellant's trunk. Abbott stated in the letter that he was coming after her. In May, 1906, appellant showed appellee a Masonic pin, telling him that her husband (Abbott) gave it to her before he died.

Luther Dutton testified that he moved to Hartford in 1901 or 1902. He was well acquainted with Chas. H. Abbott, but not very well acquainted with his wife. Witness had been to their house. He saw Chas. Abbott after Mine 45 blew up, which witness thought was in 1901. Witness and Abbott were working in the mines together. He again saw Abbott on the 4th day of August, 1913, at Rattoon, New Mexico. He had gone out there to find him. Appellee paid his expenses. Witness did not know. where Abbott was. He first went to Trinidad, Col., and heard that he had been there but was gone. Witness then went on to Rattoon. Witness got off the train and

crossed the street and spoke to Abbott. Witness recognized him at once; only talked to him a few minutes and caught the train. They did not say anything about Abbott's wife. Witness caught his train out after this short conversation and Abbott at the same time was leaving on another train. Witness did not know where he went and did not ask him.

Witness Davis testified that he saw a man by the name of Charles Abbott when the Midland Valley Railroad was building at Montreal. This was in 1902 and 1903. Abbott was working in a shop there. Witness was not much acquainted with him. He worked there a month or two. Witness never knew any other Charles Abbott there, and witness had lived there fifteen years. Witness remembers him because witness was prospecting for coal and went to the shop to have some work done. Witness was not acquainted with appellant. Had seen her several times, but did not know whether the man he saw at Montreal was her husband or not.

Charles Robinson testified that he knew Charles H. Abbott. Witness had lived in Arkansas twenty-eight years; had been a coal miner at Red Rock, Huntington, Hartford and Montreal. Witness did not know Abbott's wife, though Abbott pointed her out to witness once in Huntington, Arkansas. Witness designated appellant as the one Abbott had pointed out to him. Charles Abbott was at Montreal in 1897 or 1898, during the strike. Witness had seen him frequently before that, but had never been to his house. Witness thought the last time he saw him was in 1902 or 1903. Witness saw him last in Huntington some time before witness moved to Hartford, and witness moved to Hartford when the Rock Island was building.

G. W. Dodd testified that the Midland Valley Railroad was built in 1903 or 1904 and the Rock Island was built by where the town of Hartford is in 1899.

Chas. H. Abbott testified that he and appellant were married in the State of Texas in the year 1892. Soon after their marriage they came to Arkansas and lived

in Sebastian County until they separated. When they separated witness went west and had since lived in the States of New Mexico and Colorado, working at his usual occupation of mining. He had never obtained a divorce himself and did not know whether appellant had or not. He had never been served with summons or notified of any suit by her for that purpose. While he lived in Sebastian County he worked in the coal mines at Huntington and Burma.

Janie Clayton testified that she was a daughter of John Goset. Soon after appellant and her father were married appellant told witness that her former husband had died two or three years next before their conversation, of lung trouble.

H. N. Smith testified for appellant in rebuttal that he remembered the explosion to which witness Dutton had referred in his testimony. It was some time prior to September, 1897. Witness moved from Huntington to Waldron in September, 1897, and the explosion occurred before witness moved.

From a judgment in favor of the appellee, dismissing the petition of appellant and for costs, this appeal has been duly prosecuted.

*H. N. Smith* and *J. V. Bourland,* for appellant.

1. The burden of showing the illegality of a second marriage is upon those who attack it, where it has been consummated by the parties and is regular upon its face. 114 Ill. 611; 19 Am. & Eng. Enc. of L., 1208; 8 Ill. App. 27; 46 Ind. 259; 3 Tex. 433.

The burden upon the attacking party is to show (1) the validity of the first marriage; (2) that the absent spouse was alive at the date of the second marriage; (3) was within the State during the five-year period prescribed by statute, and (4) had not been divorced from the party to the second marriage. 29 Mo. 259; 135 Ill. 27; 119 Ind. 574; 43 Ia. 228; 27 Miss. 471.

2. The validity of the second marriage here is sustainable, under the circumstances, by the terms of our statute. Kirby's Dig., § 5178.

It will be presumed after the lapse of a reasonable time after a second marriage that a former marriage was dissolved by divorce, unless the contrary is established. 2 B. & Ald. 386; 67 Ark. 278; 61 Conn. 502; 58 Ia. 431; 12 Vt. 604; 98 Fed. 63. In case of a second marriage where the parties have lived and cohabited together, and one of them dies, it is not competent for the heirs of the deceased to attack the validity of the marriage collaterally for any purpose. 30 Barb. (N. Y.) 47; 114 N. Y. 109.

The presumption of life yields to the presumption in favor of the validity of a second marriage, whether attacked directly or collaterally. 12 Allen (Mass.) 107; 90 Am. Dec. 138; 18 Mich. 84; 5 Rich. L. (S. Car.) 452; 48 Me. 205; 12 Am. St. 453; 2 *Id.* 105; 21 Mont. 170; 6 How. (U. S.) 550.

*Geo. W. Dodd,* for appellee.

1.   The only question saved by the motion for a new trial and the only question presented here is "that the finding and judgment are contrary to the evidence." No special findings of fact or declarations of law were asked by appellant, and no exceptions saved to the admission or exclusion of testimony.

The evidence overthrows every presumption both of law and fact which might be indulged to uphold the alleged second marriage. The only reasonable conclusion to be drawn from the evidence is that Abbott was alive and in this State within five years before the date of the alleged second marriage. 28 Ark. 19; 14 Cyc. 889; *Id.* 890; 10 Am. & Eng. Enc. of L. (2 ed.) 129.

2.   Even if appellant's story be taken as true, she would not be protected by the statute. Kirby's Dig., § 5178.

Where property rights are predicated upon marriage it can be attacked in any sort of proceeding, and may sometimes be attacked collaterally. 28 Ark. 19; 19 Bland, 479, 18 Am. Dec. 344; 4 Fla. 23; 3 West, Law J. 134.

3. The findings of fact by a trial judge sitting as a jury will not be disturbed on appeal if based upon evidence. 68 Ark. 83; 70 Ark. 512; 14 Ark. 27; 13 Ark. 316; 18 Ark. 53; 57 Ark. 577; 23 Ark. 208; 46 Ark. 524.

WOOD, J., (after stating the facts). Where there is substantial evidence to sustain the findings of fact by the trial court sitting as a jury, such findings will not be disturbed. *Stiewell* v. *American Surety Co.,* 70 Ark. 512.

It is the long established rule, and consistently followed by this court, not to disturb the finding of a jury, or a trial court sitting as a jury, on issues of fact based upon legally sufficient evidence, and it is the duty of the appellate court in passing upon the issue of fact to indulge the strongest inference in favor of the finding that the evidence will warrant. The finding of the trial court, based upon conflicting evidence, is conclusive upon appeal. See *Glasscock* v. *National Box Co.,* 104 Ark. 154; *Williams* v. *Board of Directors,* 100 Ark. 166; *Toledo Computing Scales Co.* v. *Stephens,* 96 Ark. 606; *St. Louis, I. M. & S. Ry. Co.* v. *Hill,* 74 Ark. 478, and numerous cases collated in volume 4, Crawford's Digest of Arkansas Reports, page 75, under Appeal and Error.

Applying this familiar rule to the testimony in this record, the finding of the court must be sustained. There was testimony to warrant a finding that at the time of the alleged intermarriage of appellant with Goset, her husband, C. H. Abbott, was living. One witness testified he saw Abbott in August, 1913, at Rattoon, New Mexico. Appellant admitted, for the purpose of getting a trial, that Abbott himself, if present, would swear to the facts set up in the motion for a continuance. The court might have found that this was tantamount to an admission upon the part of appellant that Abbott was living at the time of the trial. However much we may differ from the trial court on this issue of fact, the weight of the evidence and the credibility of the witnesses was a matter for the trial court to determine, and his finding, based on the evidence, is conclusive on us. The uncontradicted

evidence shows that appellant and Abbott were married and that they were never divorced.

It therefore follows that the finding of the court that appellant had a living husband from whom she had not been divorced at the time of her alleged intermarriage with Goset is sustained by the evidence.

Learned counsel for appellant, to support his contention that appellant's intermarriage with Goset was legal, invokes section 5178 of Kirby's Digest, which provides: "In all cases where any husband abandons his wife, or wife her husband, and resides beyond the limits of this State for the term of five successive years, without being known to such person to be living during that time, their death shall be presumed, and any subsequent marriage entered into after the end of the said five years shall be as valid as if such husband or wife was dead."

But giving the evidence its strongest probative force in favor of the finding and judgment of the lower court, the above statute can not avail appellant. The testimony was sufficient to warrant a finding that Abbott had left his wife and had gone to foreign States and a foreign country in search of health; that this was done by mutual agreement between the appellant and Abbott. True, the testimony of appellant tends to show that in the spring or winter of 1896 or 1897 they left this State and went to Texas and other foreign States on an excursion of health, and that she left him in Old Mexico in 1899, and that she had not heard from him since 1900. But there was testimony from which the court might have found that Charles H. Abbott, the husband of appellant, was in this State as late as 1903 or 1904; for one witness testified that he had seen Chas. Abbott when the Midland Valley Railroad was being built at Montreal, and it was shown that the Midland Valley Railroad was built in 1903 or 1904. He did not know whether Charles Abbott was the husband of appellant or not, but he had seen her several times. Another witness testified that he thought he saw Charles H. Abbott in this State in 1902

or 1903. While he did not know Abbott's wife, Abbott pointed appellant out to him as his wife.

This testimony was sufficient to warrant a finding that Charles H. Abbott had not been absent from the State for a period of five consecutive years before appellant's intermarriage with Goset, which took place in 1905. Although appellant testified that she had not heard from her former husband, Abbott, since January, 1900, and did not know that he was alive and believed that he was dead; yet, the testimony of Jane Clayton tends to contradict her, and tends to show that appellant knew that her husband, Abbott, was alive within five years before she married Goset. So the presumption of death of a husband that is raised by his absence for a period of five consecutive years from the State without knowledge on the part of the wife of his being alive, is overcome by the testimony which warranted the court in finding that he was alive and in the State within that period. It follows therefore that the facts as they might have been and were found by the court preclude the appellant from having the benefit of the above statute. As there was testimony to sustain the finding of the court that C. H. Abbott, the husband of the appellant, was alive and residing within the State within a period of five years before appellant's alleged intermarriage with Goset, it follows that her intermarriage with him was void and of no effect.

Section 5176 of Kirby's Digest provides that "no subsequent or second marriage shall be contracted by any person during the lifetime of any former husband or wife of such person unless the marriage of the former husband or wife has been dissolved for one of the causes set forth in the law concerning divorces by court of competent authority."

As the uncontroverted evidence shows that appellant had not been divorced and there was evidence to warrant a finding that her husband was alive and residing in this State within five years previous to her alleged intermarriage with Goset, the court's finding to the effect that

"appellant was not the widow of John Goset, deceased, and that the alleged marriage of her to John Goset is void and of no effect, and that she is not entitled to any part of the estate of John Goset, deceased," must be sustained.

"The marriage of a man and a woman where one of them has a husband or wife by a prior marriage, who is then living and undivorced, is void and not merely voidable. Being a nullity, no decree is necessary to avoid the same." *Cartwright* v. *McGowan,* 121 Ill. 388, 2 Am. St. Rep. 105.

Appellant having shown that her alleged intermarriage with Goset was solemnized in due form under the statute, would be entitled to recover as his widow in the absence of proof to warrant a finding that such intermarriage was illegal and void. For in the absence of proof to the contrary, appellant would be aided by the presumption that if her husband were living she was divorced from him, or by the presumption that her first husband was dead at the time of her marriage to Goset. For the law is that where a woman contracts a second marriage while her first husband is alive, it will be presumed, in favor of the validity of the second marriage, that the first marriage was legally dissolved by a divorce before the second marriage was entered into, or that the former husband was dead at the time of the second marriage. *Bolden* v. *McIntyre,* 119 Ind. 514. See also *Cash* v. *Cash,* 67 Ark. 278.

But in this case the presumptions that would otherwise be indulged in favor of the appellant have been overcome by the evidence upon which were based the findings of the court.

The proof by appellant of her intermarriage with Goset in regular form shifted the burden to the appellee to show that such marriage was illegal and void, but appellee has met that burden and has overcome the presumptions in favor of the marriage being legal by evidence which warranted the court in finding that such marriage was invalid.

In *Jones* v. *Jones*, 28 Ark. 19, it is said: "The evidence of marriage may be rebutted by proving that any circumstances rendered indispensably necessary by law to a valid marriage were wanting."

The judgment is therefore affirmed.