## BLYTHEVILLE COURIER v. McCALL.

### Opinion delivered June 29, 1925.

1. CONTRACTS—METHOD OF SETTLING DIFFERENCES.—Parties to a contract may provide as to the method of settling differences arising under it, and a rule promulgated by a newspaper holding a subscription contest that, should any question arise, the decision of the manager should be absolute and final is valid.

2. CONTRACTS—DECISION OF ARBITRATOR.—Under a contract providing for submission of disputes to an arbitrator, the decision of such arbitrator must be upon substantial points of difference, and made fairly, impartially and in good faith.

3. CONTRACTS—DECISION OF ARBITRATOR—GOOD FAITH.—Where the rules of a newspaper subscription contest barred any "near relative" of the newspaper's employees, and provided that question arising in this contest should be determined finally by the management, a decision of the management that a brother-in-law was not a "near relative" was final, in the absence of fraud.

Appeal from Mississippi Circuit Court, Chickasawba District; *W. W. Bandy*, Judge; reversed.

*Little, Buck & Lasley* and *W. D. Gravette*, for appellant.

*Nelson & Crawford*, for appellee.

SMITH, J. In the fall of 1922 the Blytheville Courier, a newspaper published in the city of Blytheville, put on a campaign to increase its subscription list, and as an aid thereto offered prizes to those securing subscriptions. The prize offered to the one securing the largest number of subscribers was an automobile of the value of $1,975. The second prize was $300 in cash.

When the campaign was put on, rules and regulations governing it were promulgated and published in the paper. There were twenty-one of these rules, the third of which reads as follows: "3. No employee or near relative of any employee of The Blytheville Courier is eligible to enter this distribution. The Blytheville Courier reserves the right to reject any nomination." The twenty-first rule provided that "The Blytheville Courier guarantees fair and impartial treatment to all candidates, but, should any question arise, the decision of the management will be absolute and final."

Under the provisions of the rules promulgated, the campaign was to extend over a period of six weeks, and was to close Saturday night, November 9, 1922. The two principal contestants were Virginia McCall, a girl eleven years old, and Mrs. J. Mel Brooks.

A few days before the campaign closed Dr. McCall, the father of the girl, discovered that a boy who was employed in the mechanical department of the paper was a brother-in-law of Mrs. Brooks, and he protested against Mrs. Brooks' candidacy on the ground that she was ineligible under the rules of the contest. The contest manager decided that Mrs. Brooks was not ineligible, and the contest proceeded to its close. On Saturday night, when the votes were to be finally counted, Dr. McCall appeared before the judges who had been selected

to count the vote, and renewed his protest against Mrs. Brooks' eligibility. The manager of the contest advised the judges that they had no authority to decide this question, that it had already been settled. The judges then proceeded with the count and announced the result of the contest to be that Mrs. Brooks had received the highest number of votes and was entitled to the automobile, and that Virginia McCall had received the second highest number of votes and was the winner of the $300. The manager of the contest then delivered the automobile to Mrs. Brooks, and mailed a check for $300 to the young lady. Dr. McCall renewed his protest and declined to permit his daughter to cash the check, but mailed it to his attorney. The wife of the attorney was very ill at the time and required the constant care and attention of her husband, and after a few months' illness she died. When the attorney was able to return to his office and give attention to his professional business, he tendered a return of the check and demanded the surrender of the automobile, and upon this demand being refused brought this suit to recover the value of the automobile.

At the trial below the court declared the law to be that Mrs. Brooks was ineligible as a contestant, and to find for the plaintiff unless the jury found the fact to be that plaintiff had, under the circumstances of the case, retained possession of the check beyond a reasonable time for its return. There was a verdict and judgment for the plaintiff, from which the defendant has appealed.

We think the court was in error in declaring Mrs. Brooks ineligible. It is an admitted fact that her brother-in-law was employed by the newspaper putting on the contest, but there is at least some question, some room for reasonable and honest difference of opinion, as to whether Mrs. Brooks was a "near relative" of the employee within the meaning of the rules governing the contest. There were twenty-one of these rules, and it is obvious that it was contemplated that differences of

opinion might arise in their interpretation, and the last—
or the 21st—rule was intended to take care of that situa-
tion. It provided that, should any question arise, the
decision of the manager should be absolute and final.

These rules formed the contract under which the
contest was held, and the rule making the manager of
the contest the referee on all questions growing out of
the contest is a part of the contract. The parties to a
contract may provide in the contract how differences
arising under it may be adjusted. Such provisions are
not unusual, and their validity has been uniformly
upheld. *Boston Store* v. *Schleuter,* 88 Ark. 213; *Carlile*
v. *Corrigan,* 83 Ark. 136; *Williams* v. *Bd. Directors of
Carden's Bottom Levee Dist. No. 2,* 100 Ark. 166; *Hat-
field Special School Dist.* v. *Knight,* 112 Ark. 83.

Of course, the point of difference to be decided by
the referee or the arbitrator must be substantial and not
capricious. The arbitrator must act fairly and impar-
tially. He must exercise an honest and intelligent judg-
ment, and, if he fails to do this, or if he makes such gross
mistakes as necessarily imply bad faith, his decision
will not be binding, and it would then become the province
of the courts, in appropriate litigation, to decide the
question at issue.

Respective counsel have cited numerous authorities
as to the meaning of the phrase, "near relative." We
do not review them here because the phrase is sufficiently
ambiguous to furnish a reasonable basis for a difference
of opinion as to its meaning.

The management of the contest for appellant was
conducted by a Mr. Morrison, who was a representative
of "The Portlowe Plan," a concern engaged in putting
on and conducting campaigns of this character for va-
rious newspapers to increase their circulation. There is
no intimation that Morrison decided corruptly or arbitra-
rily, or that he did not exercise his honest and best judg-
ment in the decision of the question as to the meaning
of the phrase "near relative." He testified that he did,

and there is no contradiction of this testimony, and, as it cannot be said that the question is so free from doubt as to indicate a mistake so gross as to indicate bad faith, his decision, which was that of the management, must be accepted as final and binding on the contestants.

The judgment must therefore be reversed, and, as the case has been fully developed, it will be dismissed.