LEE *v.* LEE.

4-3926

Opinion delivered June 24, 1935.

164

*Martin, Wootton & Martin,* for appellant.

*Walter J. Hebert* and *Murphy & Wood,* for appellee.

JOHNSON, C. J. Appellant and appellee, while temporarily residing in Hot Springs in August, 1934, were married in conformity to the laws of this State. A few days subsequent thereto appellant instituted this annulment proceeding in the Garland Chancery Court in which he alleged that, at the time of the marriage, he was suffering from amnesia which rendered him incapable of contracting a valid marriage. Subsequently, he filed an amendment to his complaint in which he alleged that, at the time of his marriage to appellee in Arkansas, he had a living wife—not divorced, living in the State of Florida. Appellee answered the complaint thus filed, and denied the material allegations thereof and amendment thereto, and also prayed temporary alimony, suit money and attorneys' fees.

The chancellor heard testimony upon appellee's prayer for temporary alimony, suit money and attorney's fees, and made and entered an order allowing her the sum of $100 per month beginning September, 1934, and continuing until the suit was finally terminated as temporary alimony, and allowed $200 attorneys' fees and $25 suit money.

The testimony adduced on behalf of appellee tended to show that she had no property in her own right, and no funds with which to defend the suit instituted by appellant, and that she contracted her marriage with appellant in good faith, and without knowledge of any existing disability in him to so contract marriage. Appellant's affidavit was filed in support of his contention in which he swore that, at the time of his marriage to appellee in Arkansas, he had a living wife, not divorced, residing in the State of Florida.

This appeal asserts lack of power in the chancery court to make the order of allowances referred to. This contention is grounded upon the proposition that since

the uncontradicted testimony of appellant shows that he had a living wife, not divorced, residing in the State of Florida at the time of his marriage to appellee in Arkansas, the Arkansas marriage contract is void from its inception, and no marital rights can be predicated thereon.

In *Gossett* v. *Gossett,* 112 Ark. 47, 164 S. W. 759, we held that, where either party to a marriage contract had a living husband or wife, not divorced at the time of the subsequent marriage contract, the subsequent marriage contract was void and not merely voidable. It follows from this that appellant's contention here urged must be decided upon the basis that his Arkansas marriage contract is void if it be established that appellant had a living wife, not divorced at the time of the consummation thereof. Appellant cites and relies upon as decisive of his contention *Fountain* v. *Fountain,* 80 Ark. 481, 97 S. W. 656. This case has no application to the facts here presented. In the case referred to, the wife brought suit for divorce, and the husband by answer denied the validity of the marriage contract. Proof was heard by the lower court on the preliminary question of temporary alimony and attorneys' fees, and we held, as the lower court had, that the proof was sufficient to warrant the allowance and affirm the order in this behalf.

*Morgan* v. *Morgan,* 149 Ga. 625, 97 S. E. 675, 4 A. L. R. 925, is also cited and relied upon by appellant as supporting his contention. This case arose between a husband who was under statutory disability of minority at the time of his marriage contract and his wife who sought temporary alimony and attorneys' fees. The court held the wife not entitled to such allowances pending the suit. Conceding this case to be rightly decided, it has no application to the facts of this case. There the minor husband had no capacity to contract marriage, whereas in the instant case the husband has no impediment save that created by his own act. Moreover, *Morgan* v. *Morgan, supra,* is not supported by the weight of authority on this subject.

I R. C. L., § 66, title "Alimony," states the general rule as follows: "Where an annulment of the marriage is

sought by the husband, who admits that a ceremonial marriage took place, but claims it to have been illegal and void, the wife is entitled to a reasonable allowance to enable her to make a proper defense to the suit, provided she denies on oath the allegations on which such invalidity is based.''

Bishop on Marriage, Divorce and Separation, vol. 2, § 925, states the general rule as follows: ''If parties enter upon cohabitation under a marriage which in fact is void, a *fortiori* under a voidable one, this reasoning shows that, upon a suit between them to set it aside and declare it void, there may be temporary alimony. * * * Not perhaps following this form of reasoning, but in some form conducing to the same result, the courts have generally held the mere *de facto* marriage to be adequate for temporary alimony and suit money in the nullity suit, whether on the allegation that the marriage was void or that it was voidable.''

Keezer, Marriage and Divorce, 2d ed., § 711, *et seq.,* states the general rule as announced by Bishop, *supra,* and cites authorities throughout the United States in support thereof. The general rule deducible from the great weight of American authority is that, when a *de facto* marriage is admitted or established, and the wife is otherwise entitled to temporary alimony, suit money and attorney's fees, such allowances may be made pending the suit, irrespective of the speculative outcome of such suit. See annotations, 4 A. L. R., page 926, 26 L. R. A. (N. S.) page 500, in addition to the authorities cited, *supra.*

Appellant not only admits a *de facto* marriage to appellee, but invokes the aid of a court to destroy its *prima facie* validity, and we know of no sound rule of law or reason which denies to appellee the ordinary right of temporary alimony, suit money and attorneys' fees while defending such litigation.

No error appearing, the decree is affirmed.