Helen E. White PAYNE *v.* James WHITE, Jr.

CA 80-439                              614 S.W. 2d 684

Court of Appeals of Arkansas
Opinion delivered May 6, 1981

*Richard D. O'Brien*, for appellant.

*Sharpe & Morledge*, for appellee.

GEORGE K. CRACRAFT, Judge. The appellant, Helen White Payne, brings this appeal from an order of the St. Francis County Chancery Court adjudging her in contempt for willful noncompliance with its order, imposing upon her a fine of $1500, allowing appellee an attorney's fee in the proceedings of $1500 and directing that she reimburse appellee for his attorney's fee paid in California as a result of her noncompliance. Appellant urges on this appeal that the court abused its discretion in holding her in contempt, that the fees for the attorneys were excessive and unauthorized by law. We do not agree.

The action was originally brought by the appellant in the St. Francis County Chancery Court praying for a divorce, property settlement and custody of the minor child of the parties. The appellee, James White, Jr., filed an answer and cross-complaint in which he claimed that he was entitled to a divorce and also prayed that he be awarded custody of their minor child.

Thereafter the matter was set down for trial by the court on the 5th day of September, 1979. The appellant did not appear and the court proceeded to hear testimony and granted a divorce to the appellee, in which decree appellee was granted "sole and exclusive custody of Amy Louise White, minor child of the parties." No right of visitation was granted to the appellant. On September 13, 1979, the

appellant filed a motion to modify the decree stating that at the time of the trial she was without funds with which to make the trip from California where she then was, to attend the trial. Also she claimed that at the time of the trial the child was not within the jurisdiction of the court but with her in California.

On the 20th day of September, 1979, a hearing was heard on that motion at which the appellant appeared with the child. After a hearing thereon the court refused to modify the order with respect to the custody of the child but did allow visitation with appellant for one week during the Christmas season and three weeks during summer vacations, authorizing such visitations to take place either in the State of Arkansas or in the State of California.

During the course of this hearing the appellee voiced an objection to out of state visitation by the appellant, believing that once the child was removed from the state appellant would not return her. The court order contained the following admonition:

In making this award of visitation beyond the jurisdiction of this court, the court is mindful of defendant's fear that the plaintiff would refuse to return the child to the jurisdiction of this court at the end of the visitation term, and specifically cautions the plaintiff that failure to return the child at the end of visitation will be a specific violation of the custody orders of this court, to be dealt with accordingly.

During the Fall of 1979 negotiations were had between the appellant and appellee with regard to the visitation during the Christmas season. On December 26, 1979, the appellee, pursuant to the order of the court and agreement made with appellant through her attorney, delivered the minor child to appellant at the Memphis Airport for a one week visitation in the State of California upon the specific agreement of the parties and order of the court that the child be returned to appellee at the San Diego Airport on January 2, 1980, at a time agreed upon.

The day before the child was taken to the Memphis Airport the appellee spoke with the appellant by telephone at a number furnished him by appellant as her residence telephone. Two days later he learned that the number she had furnished him had been disconnected and the address she had given him was not her true address. On December 28, 1979, two days after receiving custody of the child, the appellant filed an action in the Superior Court of San Diego County seeking custody of the minor child and obtained an ex parte order for custody. The appellant on that same day by telephone notified appellee's mother that the child would not be returned on January 2nd, that there was no need to come to California to pick up the child in accordance with their prior agreement.

On the prudent advice of his counsel appellee sent his present wife to San Diego on January 2nd as agreed. She had appellant paged and remained in the terminal for some period past the appointed hour. Appellant did not bring the child to the airport that day and so admitted in court. Appellee's wife remained in the State of California and the appellee, after conferring with his local counsel, and engaging counsel in California, joined her in San Diego where they remained for more than one week. On January 7th, 1980, the California court conducted a hearing and after hearing the evidence and examining the certified record of the Arkansas proceedings, found that it had no jurisdiction of the matter and that the courts of the State of Arkansas had at all times complete jurisdiction over the issue of the custody of the minor child. The California court directed that the child be returned to the appellee and that all proceedings with reference to her custody would remain in the court in Arkansas. That order also contained a finding that appellant had acted on advice of counsel and that she had no intention to violate the Arkansas decree, and expressed a desire that she not be penalized for taking the action that she took in the courts in California.

The appellee testified that he had incurred expenses in preserving his rights in the California court in excess of $6,600 for airline tickets for him and his witnesses, housing, shelter and attorney's fee. He further testified and introduced

into evidence a statement from his California attorney in the amount of $3,906.28, of which amount he had paid the sum of $2,000. There was also testimony that at the time this occurred the appellee was forced to take time off from work for over ten days, as a result of which he lost his job and remained unemployed for a period of about two weeks thereafter.

Upon this return to the State of Arkansas the appellee immediately filed a petition for modification of the decree so as to preclude further visitation by appellant or in the alternative that any visitation be restricted to that which might be exercised in his presence. He prayed that he have judgment against the plaintiff for all his expenditures, that she be held in contempt and that he be awarded his attorney's fee in these proceedings. The appellant filed her answer and counterplea in which she prayed that the petition of appellee be dismissed and that she be awarded the custody of the minor child based on change in circumstances.

After a hearing in which evidence was heard and appellant appeared, the trial court in written findings found her to be in willful noncompliance with the orders of the court. The court then further found that if the appellant "purge herself of the contempt, as hereinafter set forth," further visitation might be permitted but only then upon the posting of a substantial bond guaranteeing the performance of her obligation to return the child. A condition of her purge was that she be required to reimburse the appellee the sum of $2,000 actually paid by him to the attorneys in California. The court did not require her to reimburse any of the other undisputed expenses. The trial court further found that she should be responsible for, and directed her to pay, the expenses of the appellee's Arkansas attorney in the amount of $1500. The court further imposed upon her a fine of $1500.

The appellant argues that the court abused its discretion in holding her in contempt because it was required to give full faith and credit to the expression of desire in the California court's decree, that the Arkansas court not hold her in contempt. We find no merit to this contention. The

expression of the California court's sympathy for her is certainly not binding upon this court and is not such an order as is contemplated by the full faith and credit clause. The expression referred to was nothing more than a suggestion by the California court as to action it felt should be taken by the chancellor in Arkansas. It could be nothing more, as a court in one state cannot adjudicate what a court in another state should do with regard to enforcement of its own orders or the manner in which it should do so. *Nehring* v. *Taylor*, 266 Ark. 253, 583 S.W. 2d 56.

Nor do we find the fine of $1500 to be excessive when the circumstances are considered. In his findings the trial court recited that in the earlier proceedings he had found her to be unfit because of her manner of living and conduct in general, and particularly her conduct and attitude toward the child. Notwithstanding that, she had by scheme undertaken to circumvent the order of the court by removing the child and secreting her outside the jurisdiction of the court. The court commented that although she might have relied on advice of counsel, it could not permit erroneous advice of counsel to shield her from a direct, willful and contumacious violation of the order of the court of which she was well aware. In its findings the court also noted that this type of conduct was receiving national attention and that courts had a duty to deal with such conduct harshly not only as punishment for the violation of the act, but as deterrent to others. The trial judge, according to the record, had conducted all of the proceedings in this matter and was well aware of and acquainted with the background and all attending circumstances. His discretion in this matter should not be disturbed unless it has been clearly abused. When the amount of this fine is compared with the enormity of her contempt and the economic loss to the appellee for which he was not reimbursed, we cannot say the fine imposed by the court was excessive.

The appellant next asserts that the court erred in granting appellee a $1500 fee for his Arkansas attorney because it was clearly excessive. The trial court had presided over all of these proceedings and was in a far better position to assess the value and amount of these services than this court would

be. In making that award the court considered the negotiations of counsel leading up to the Christmas visitation, and the contact with California attorneys during those proceedings as well as the conduct of the proceedings had before it. We do not find it to be excessive.

Appellant further argues that the award of an attorney's fee was not allowable under Ark. Stat. Ann. § 34-1210 (Repl. 1979) inasmuch as this was not a proceeding for the enforcement of payment of "alimony, maintenance and support during pendency of an action for divorce." Section 34-1210 is as follows:

> During the pendency of an action for divorce for alimony, the court may allow to the wife or to the husband maintenance and a reasonable fee for her or his attorneys, and enforce the payment of the same by orders and executions and proceedings as in cases of contempt, and the court may allow either party additional attorney's fees for the enforcement of payment of alimony, maintenance and support provided in a decree.

While that statute would appear to be limited to actions to enforce payment of alimony, maintenance and support, the court's power to award attorney's fees in proceedings such as this is not limited to the statutory authority. The Supreme Court has consistently held that regardless of the effect of that statute, it is within the inherent power and jurisdiction of a court of equity to allow attorney's fees in matters not specifically covered by that statute, including contempt proceedings. *Finkbeiner* v. *Finkbeiner*, 226 Ark. 165, 288 S.W. 2d 586; *Feazell* v. *Feazell*, 225 Ark. 611, 284 S.W. 2d 117; *Gusewelle* v. *Gusewelle*, 229 Ark. 191, 313 S.W. 2d 838. In *Feazell* it was held that the allowance of fees under this inherent power was one that was vested within the sound discretion of the trial court. Under the circumstances of this case we cannot say that the trial court abused that discretion.

The appellant finally argues that the order directing the appellant to pay the sum of $2,000 to be applied on the fees paid the California attorney was excessive, unauthorized,

and one which ought to have been applied for in the California courts.

We cannot say that the award was excessive. The evidence discloses that the attorney had submitted a bill in excess of $3,900, of which amount the sum of $2,000 had been paid by the appellee at the time the services were rendered. The court here did not award the full fee but only that part which had already been paid. The award was made under the inherent power of the court to allow attorney's fees in proceedings such as those now before the court. Nor do we see merit in appellant's contention that the fees for services in the California court should have been assessed in that court. The fact that the services of the attorney were performed in California does not alter the fact that these services were essential to the successful prosecution of the action pending in the St. Francis County Chancery Court. If those services had not been skillfully performed the Arkansas court would have been powerless in its effort to enforce its decrees. This fee was incurred in direct connection with and as a part of this proceeding.

We find additional authority for the action of the trial court upon this issue in *Walker* v. *Fuller*, 29 Ark. 448, at 468, where the court recognized very strongly the principle that, in certain cases, process for contempt can be used to effect civil remedies, the result of which are to make the innocent party whole from the consequences of contemptuous conduct.

We affirm.

MAYFIELD, C.J., CLONINGER, J., and CORBIN, J., dissent.

DONALD L. CORBIN, Judge, dissenting. I must respectfully dissent to the award of a $2,000.00 attorney fee for reimbursement of appellee's California attorney. The chancellor did indirectly what he couldn't do directly — order damages paid under the guise of attorney fees.

Appellee relied upon Ark. Stat. Ann. § 34-1210 (Supp. 1979) to support his position that the reimbursement of his

$2,000.00 attorney fee was proper. This statute provides:

> During the pendency of an action for divorce or alimony, the court may allow to the wife or to the husband maintenance and a reasonable fee for her or his attorneys, and enforce the payment of the same by orders and executions and proceedings as in cases of contempt, and the court may allow either party additional attorney's fees for the enforcement of payment of alimony, maintenance and support provided for in the decree.

This statute has been stretched tighter than any rubber band to provide attorney fees in an action for modification of custody as in *Finkbeiner* v. *Finkbeiner*, 226 Ark. 165, 288 S.W. 2d 586 (1956); in a contempt proceeding for enforcement of support as in *Feazell* v. *Feazell*, 225 Ark. 611, 284 S.W. 2d 117 (1955) and in an annulment proceeding as in *Lee* v. *Lee*, 191 Ark. 163, 83 S.W. 2d 840 (1935). This is in spite of the fact that the statute provides only that attorney fees may be allowed "during the pendency" of an action for divorce or alimony and for the enforcement of payment of alimony, maintenance and support as provided for in the decree.

In *Farm Bureau Mutual Insurance Co.* v. *Kizziar*, 1 Ark. App. 84, 613 S.W. 2d 401 (1981), this Court adopted the guidelines promulgated under the Code of Professional Responsibility of the American Bar Association which were adopted by the Arkansas Supreme Court. The factors to be used as guidelines in determining reasonableness of an attorney's fee are to include the time and labor required, the novelty and difficulty of the questions involved; the skill requisite to perform the legal service properly; the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the client; the experience, reputation, and ability of the lawyer or lawyers performing the services; and whether the fee is fixed or contingent.

In the instant case, the appellant relied upon the advice of her California counsel to seek relief. The California court was the proper body to entertain a request for attorney fees incurred in an action before it, and the request for reimbursement of attorney fees should have been made at that time before the California court. The California court gave full faith and credit to the Arkansas decree and expressed a desire that ·the Arkansas court not hold appellant in contempt. The appellant relied upon our system of jurisprudence to pursue her course of action. She was unsuccessful and immediately turned the child over to the appellee upon the conclusion of the California action.

This is clearly an abuse of discretion and it is an example of our courts engaging in the legislative process. The term "costs" or "expenses" as used (even in a statute) is not understood ordinarily to include attorney's fees. *Lewallen* v. *Bethune,* 267 Ark. 976, 593 S.W. 2d 64 (1980); 20 Am Jur. 2d *Costs,* § 72, p. 59. The right to recover attorney fees from one's opponent in litigation as a part of the cost thereof does not exist at common law. *Lewallen* v. *Bethune, supra*; 20 Am. Jur. 2d *Costs,* § 72. Such an item of expense is not allowable in the absence of a statute or rule of the court, or some agreement expressly authorizing the taxing of attorney fees in addition to the ordinary costs. *Lewallen* v. *Bethune, supra.*

In *C.R.T., Inc.* v. *Brown*, 269 Ark. 114, 602 S.W. 2d 409 (1980) the Court said:

> Since this was a civil contempt proceeding we find it entirely appropriate that the chancellor awarded attorneys' fees and costs. The award of attorney's fees in civil contempt action has been approved by the United States Supreme Court. *Fleischmann Distilling Corp.* v. *Maier Brewing Co.*, 386 U.S. 714, 87 S. Ct. 1404; 18 L. Ed. 2d 475 (1967).

In that case, the attorney fees were based on the number of hours appellee's attorneys said they worked.

The facts in the instant case are distinguishable from

those in *C.R.T., Inc.* v. *Brown, supra.* In that case the attorneys were Arkansas attorneys regularly practicing before the bar of the Court and they testified as to the amount of work that they did in behalf of their clients. In the instant case, the California attorney was never present before the Arkansas court and there was only a mere invoice showing that the appellee had paid a $2,000.00 fee. No evidence was taken as to the number of hours, skill, or any of the other guidelines adopted by our Supreme Court to determine the reasonableness of the California attorney fee.

MAYFIELD, C.J., and CLONINGER, J., join in this dissent.