Samuel Bruce BAGGETT, Jr. *v.* STATE of Arkansas

CA CR 84-217                              690 S.W.2d 362

Court of Appeals of Arkansas
Division II
Opinion delivered May 29, 1985

*Robert E. Garner*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint E. Miller*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Judge. Appellant Samuel Bruce Baggett, Jr., was tried before a Jefferson County jury on August 8 and 9, 1984, and found guilty of interference with custody in violation of Ark. Stat. Ann. § 41-2411 (Repl. 1977), and sentenced to the Arkansas Department of Correction to a term of 3½ years and fined $5,000. We affirm.

Appellant failed to deliver his minor son to the Warren City Police Station in Bradley County on July 25, 1982, pursuant to the requirements of the terms of a custody decree issued by the Jefferson County Chancery Court. The mother (custodial parent) was to pick up and return the child to the custodial residence in Jefferson County.

On July 28, 1982, a felony information was filed in Jefferson County Circuit Court charging appellant with interference with custody, a violation of Ark. Stat. Ann. § 41-2411.

On August 6, 1982, the Chancery Court of Jefferson County entered the following ex parte order:

> The Court finds that the defendant, Bruce Baggett, is guilty of contempt of court as of July 25, 1982, for not

returning the child of the parties to the plaintiff at the Warren Police Station as previously ordered. He is hereby sentenced by this court to the Jefferson County Jail for a period of ninety (90) days and a fine of $1,000.00 is hereby levied against him. The Court will consider remitting part of the monetary fine and jail sentence upon proper application by the defendant if made within five (5) days after this order is brought to the defendant's attention as proven by the greater weight of the evidence. The Court further finds that in the event the defendant does not return the child to the plaintiff within five (5) days after notice of this court's finding, an additional fine of $100.00 per day is hereby levied for every day until the child is returned to the petitioner. The Court will consider additional incarceration as well.

The child, with his father, was found by the F.B.I. in Nashville, Tennessee, on August 3, 1983.

## I.

APPELLANT ALLEGES IN HIS FIRST CONTENTION FOR REVERSAL THAT HIS EARLIER CONTEMPT FINDING BY THE JEFFERSON COUNTY CHANCERY COURT PROHIBITED THE SUBSEQUENT FELONY PROSECUTION BY THE JEFFERSON COUNTY CIRCUIT COURT FOR INTERFERENCE WITH CUSTODY BECAUSE IT PLACED HIM IN DOUBLE JEOPARDY.

Both the Arkansas and United States Constitutions prohibit placing a person twice in jeopardy for the same offense. Ark. Const. art. 2, § 8; U.S. Const. amend. 5. In *Decker* v. *State*, 251 Ark. 28, 471 S.W.2d 343 (1971), the Arkansas Supreme Court stated that the test of double jeopardy is not whether a defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense, and where two statutes are intended to suppress different evils, conviction under one will not preclude prosecution of the other.

Both appellant and the State agree that if the Jefferson County Chancery Court's contempt proceeding of August 6, 1982, was civil in nature, there would be no former jeopardy

defense to appellant's prosecution for interference with custody in the Jefferson County Circuit Court. The State argues that the chancery contempt proceeding was civil in nature. Appellant argues just as vigorously that it was civil and criminal in nature and if it was criminal, then double jeopardy would have been a defense.

*Shillintani* v. *U.S.*, 384 U.S. 364 (1966), provides the following test to determine if contempt findings are civil or criminal in nature - "What does the court primarily seek to accomplish by imposing sentence?" The Arkansas Supreme Court in *Dennison* v. *Mobley*, 257 Ark. 216, 515 S.W.2d 215 (1974), stated that: "If the main purpose is to punish in order to maintain the dignity, integrity and authority of, and respect towards the court, then the contempt is criminal in nature." A later case, *Ward* v. *Ward*, 273 Ark. 198, 617 S.W.2d 364 (1981), stands for the same principle. *Ward, supra*, also noted that civil contempt proceedings are intended to protect and enforce the rights of private parties by compelling obedience to court orders and decrees. We agree with the parties' conclusion that criminal contempt *punishes* whereas civil contempt *coerces*.

When faced with the question of whether a contempt proceeding was civil or criminal in nature, some jurisdictions have utilized the approach of determining whether the act giving rise to the contempt proceeding was committed in the presence of the court (direct) or committed outside the presence of or away from the court (indirect). Indirect criminal contempt proceedings have been held in a majority of jurisdictions to bar, on double jeopardy grounds, subsequent criminal prosecutions which are based on the same facts. *State* v. *Thompson*, 294 Or. 528, 659 P.2d 383 (1983), (contempt charge imposed on defendant for entering neighbor's land after having been enjoined from doing so in property dispute); *People* v. *Holmes*, 11 Ill. App. 3d 498, 368 N.E.2d 1106 (1977), (defendant violated protective order entered pursuant to divorce complaint enjoining him from accosting or molesting his wife and although he was not punished in contempt proceeding, this did not preclude finding of double jeopardy in subsequent criminal prosecution for armed violence based upon same acts which were previously subject of contempt hearing); *Maples* v. *State*, 565 S.W.2d 202 (Tenn. 1978), (summary criminal contempt finding against defendant as a result of an admittedly fraudulent divorce proceeding which

defendant instituted in chancery court and in which he gave false testimony did not prevent subsequent criminal prosecution for perjury based on same conduct under principle of double jeopardy).

Other courts have permitted a subsequent criminal prosecution based upon the same facts as the criminal contempt when the criminal contempt was direct. *U.S.* v. *Mirra*, 220 F.Supp. 361 (S.D.N.Y. 1963), (constitutional prohibition against double jeopardy did not prevent prosecution of defendant, who hurled witness' chair at assistant U.S. attorney and who was summarily held in contempt, for assault).

Appellant relies principally upon *State* v. *Hope*, 449 So.2d 633 (La. Ct. App. 1984). There, the Court of Appeals of Louisiana did not address the question of whether the acts constituting contempt were direct or indirect. The defendant picked up his minor child from the residence of the mother (custodial parent) for weekend visitation. He left the state with the child and did not return the child to the mother until approximately five months later. The defendant was found guilty of criminal contempt on the citation by the mother and was sentenced to ten days in jail. After serving that sentence, defendant was charged with simple kidnapping. In holding that the subsequent kidnapping prosecution would place the defendant in double jeopardy, the Louisiana Court of Appeals first determined that the contempt proceeding was criminal in nature, utilizing the test enunciated in *Shillitani, supra*. In making this determination, the court noted that the defendant was not given a choice between complying with the court's orders or going to jail. The court stated that the primary purpose of the order was to punish the defendant for his non-compliance with previous orders of the court although the ten-day jail sentence may have had the effect of compelling him into complying with future court orders. The court next addressed the question of whether the trial on the kidnapping charge would expose the defendant to double jeopardy, utilizing the "Blockburger" test, i.e., whether each statute required proof of an additional element which the other did not. *Blockburger* v. *U.S.*, 284 U.S. 299 (1932). The "same evidence" test was also used by the Louisiana Court of Appeals. That test provides that if the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and

a defendant can only be placed in jeopardy for one. *State* v. *Steele*, 387 So. 2d 1175 (La. 1980). It was noted by the court that the "same evidence" test was somewhat broader in concept than the "Blockburger" test.

The Louisiana Court of Appeals applied the above tests holding that:

> In the instant case, the evidence necessary to convict defendant of the first offense (contempt of court) would not have been sufficient to convict defendant of the second offense (simple kidnapping). The contempt charge only required proof that defendant willfully disobeyed a lawful order of the court. The simple kidnapping charge required proof that defendant took the child out of the state, from the custody and without the consent of the legal custodian, with the intent to defeat the jurisdiction of the court. However, the proof necessary to convict defendant of the simple kidnapping charge would have been sufficient to convict defendant of the contempt charge. We therefore conclude that the two offenses are the same under the 'same evidence' test and that trial of defendant on the simple kidnapping charge would have the effect of placing defendant twice in jeopardy for the same course of conduct.

We agree with appellee that *State* v. *Hope, supra*, is not controlling and is distinguishable. There, the child had been returned to the custodial parent before the defendant was found in contempt. The defendant was personally before the court after the missing child had been returned to the custodial parent. There was no need to coerce the defendant as the child had already been returned to the custodial parent. The defendant had served the ten days of jail time pursuant to the contempt order prior to being charged with simple kidnapping. Finally, the court in *State* v. *Hope, supra*, made the initial determination that the former contempt proceeding was criminal in nature.

In the case at bar, the child had not been returned to the custodial parent at the time the Jefferson County Chancery Court issued its contempt order as was the case in *State* v. *Hope, supra*. The abstract of the record does not indicate when or if appellant was given notice of the chancery contempt order. Our

review of the transcript, however, reveals one occasion at which time appellant may have received notice of the contempt order. This may have occurred when he was served with the felony information upon his return to Arkansas. The record does not establish that appellant has ever paid any part of the fine or served a day in jail pursuant to the provisions of the ex parte contempt order nor that he has to this day appeared before the chancellor to determine whether the ex parte contempt order should be made permanent.

In *Dennison* v. *Mobley, supra*, appellants sought review of a Faulkner Chancery Court order holding them in contempt for violation of a previous order of that court relating to the custody of their three-year-old granddaughter. The chancery court found that appellants had failed to return the child after a three-hour visitation and that appellants had aided and abetted their son from returning the child. The Arkansas Supreme Court sustained that part of the chancery court's order holding appellants in criminal contempt and quashed the part holding them in civil contempt.

The Court in *Dennison, supra*, stated:

> The chancellor's findings and the punishment mated [sic] out, particularly when considered along with his opening and closing admonitions, clearly indicate that he considered the proceeding as one for both civil and criminal contempt in the light of such cases as *Songer*. The $100 fine and three days' jail sentence, characteristic of punishment for criminal contempt, were in addition to the civil contempt penalty obviously calculated to bring about compliance with the custody order, i.e., the fine of $100 per day and a commitment to jail until the child was returned to her mother.

The material language of the contempt order was as follows:

> 4. That the Court finds and hereby levies a fine of $100 to be placed upon Charles and Modelle Dennison jointly. Also, a $100 a day fine, per day, until said child, Jessica Lynn Dennison is returned to the jurisdiction of this Court and to the above named plaintiff, Pearlie Mae Dennison. That said Charles and Modelle Dennison are to remain in jail until said child is returned to this Court and that in

addition to the time they are in jail an additional three (3) days is to be served by Charles and Modelle Dennison.

In the instant case appellant contends the Jefferson County Chancery Court contempt order is of civil and criminal connotation. He further argues that the civil portion involved the fine of $100 per day and additional incarceration for each day the child was not returned and that the criminal portion concerned the 90-day sentence in jail and fine of $1,000. Appellee contends on the other hand that the Jefferson County Chancery Court exercised its contempt power civilly on August 6, 1982, to coerce appellant to return the child to his mother.

It is apparent that there is an additional element in the contempt order in the case at bar which was not present in the *Dennison* order. Here, the chancery judge used the additional language following the 90-day jail sentence and the $1,000 fine, to wit: "The Court will consider remitting part of the monetary fine and jail sentence upon proper application by the defendant if made within 5 days after this order is brought to the defendant's attention as proved by the greater weight of evidence." We believe this additional language clearly established the intent of the order as being coercive. Accordingly, we hold that the Jefferson County Chancery Court contempt order was civil in nature and that there was no former jeopardy defense by appellant as to his subsequent prosecution for interference with custody by the Jefferson County Circuit Court.

The chancellor obviously utilized every weapon in his arsenal in an effort to enforce the rights of a party, i.e., the right of the mother to the custody of the child. Had appellant ever appeared before the chancellor subsequent to the return of the child and been incarcerated and fined, or should the chancellor seek to punish appellant following this conviction for interference with custody, we might reach a different result. See, *Ex Parte Englutt*, 619 S.W.2d 279 (Tex.Civ.App. 1981). We view the contempt action in the chancery court here as being entirely different in purpose than that of the criminal action for interference with custody and that to determine otherwise would greatly hamper the day-to-day enforcement of the rights of individuals by the chancery courts in this State. Furthermore, to permit a defendant to escape the consequences of his contumacy via the double jeopardy route would be to countenance a state of affairs

where chancery judges could become ineffectual in enforcing their contempt powers for fear that a contempt conviction used as a means of enforcing the rights of individuals would raise a constitutional bar to a subsequent prosecution of the same act. We find no merit to this assignment of error.

## II.

APPELLANT ALLEGES IN HIS SECOND CONTENTION FOR REVERSAL THAT THE TRIAL COURT ERRED IN NOT GRANTING HIS MOTION FOR TRANSFER SINCE JEFFERSON COUNTY DID NOT HAVE VENUE.

Appellant's final point for reversal concerns the trial court's denial of appellant's motion to transfer the case on the basis of lack of venue from Jefferson County to Bradley County.

The record reflects that appellant drove to Jefferson County on July 11, 1982, to pick up the parties' minor child. Appellant emphasizes in his brief that this was done with lawful authority and that he did not consider committing the crime until three days later when served with his ex-wife's petition to terminate visitation at which time appellant and the minor child were in Bradley County. Appellant argues that the crime was committed in Bradley County when he proceeded to leave his home in Warren with the child.

Appellee argues that to prove Jefferson County did not have venue, appellant had to establish that evidence was introduced at trial affirmatively showing Jefferson County lacked venue. Appellee cites Ark. Stat. Ann. § 43-1426 (Repl. 1977), and § 41-110(2) (Repl. 1977), as authority for this proposition. The State submits that no evidence was admitted to this effect and that appellant committed the criminal offense in Jefferson County because appellant's ex-wife's custodial relationship was exercised in Jefferson County. Appellee contends that appellant's argument overlooks the fundamental interest protected by Ark. Stat. Ann. § 41-2411 — appellant's ex-wife's custodial relationship with their son.

The record reflects that at the close of the prosecution's case-in-chief, appellant orally moved that the charges against him be transferred to Bradley County pursuant to Ark. Stat. Ann. § 43-

2123 (Repl. 1977). Appellant argued unsuccessfully to the trial judge that no testimony or evidence had been presented by the State that any offense took place within the jurisdiction of the Jefferson County Circuit Court.

Ark. Const. art. 2, § 10 provides that an accused is entitled to trial by an impartial jury of the county in which the crime was committed. It is presumed that an offense charged was committed within the jurisdiction of the court in which the charge is filed, unless the evidence affirmatively shows otherwise. Ark. Stat. Ann. § 43-1426; *Hill* v. *State*, 253 Ark. 512, 487 S.W.2d 624 (1972). As stated in *Johnson* v. *State*, 254 Ark. 703, 495 S.W.2d 845 (1973), the State does not have to prove the crime was committed in the forum county.

In the case at bar appellant presented his motion to transfer prematurely at the close of the State's evidence. Pursuant to the above authority, the State was not required to put on proof that the interference with custody charge was committed in Jefferson County as the information stated that the crime was committed therein and venue was presumed proper unless there was affirmative evidence to the contrary. The record reflects that there was no such evidence at this stage in the proceedings and, accordingly, the trial court did not abuse its discretion in denying appellant's motion to transfer. While admittedly appellant may have put on some proof following his motion to transfer to the effect that he did not consider committing the crime until he returned to Bradley County and that he fled from that county with the child, our independent review of the record reveals that appellant did not at any subsequent time during the course of the trial renew his motion to transfer. We find no merit to this assignment of error.

Affirmed.

CRACRAFT, C.J., and MAYFIELD, J., agree.