DELTA SCHOOL OF COMMERCE, INC., Delta School
of Commerce Alexandria, Inc. d/b/a Delta Career College
*v.* Lula HARRIS, Veronica Hicks, Joanne Holloway,
Nawania·Williams, Carolyn Harris, and Donna Smith

91-245                                    839 S.W.2d 203

Supreme Court of Arkansas
Opinion delivered October 19, 1992

*Rose Law Firm*, by: *Tim Boe* and *Mark Alan Peoples*, for appellants.

*Everett O. Martindale*, by: *Melinda Gilbert, P.A.*, for appellees.

DAVID NEWBERN, Justice. This is a fraud case. Lula Harris, Veronica Hicks, Joanne Holloway, Nawania Williams, Carolyn Harris, and Donna Smith (the students) are the appellees. They claimed that admissions representatives of Delta School of Commerce, Inc. (Delta), the appellant, knowingly made false statements about Delta's medical office assistant program, thereby inducing them to enroll. The jury awarded the students compensatory and punitive damages.

Delta alleges error in the Trial Court's (1) failure to grant their motion for severance and motion for directed verdict on punitive damages, and (2) failure to grant their motion to dismiss because the students did not exhaust an administrative remedy provided through the United States Department of Education before filing suit. We find no error and affirm.

The students' complaint alleged that, as a result of Delta's fraudulent misrepresentations, each sustained actual and consequential damages of $13,650. The complaint also sought $50,000 punitive damages per student. Prior to trial, Delta moved to sever

the separate claims. Delta asserted a consolidated trial of several claims requesting punitive damages would result in substantial prejudice. Relying on *Missouri Pac. R. R. Co.* v. *Arkansas Sheriff's Boys' Ranch*, 280 Ark. 53, 655 S.W.2d 389 (1983), Delta argued a consolidated trial would unduly emphasize the need to penalize the tortfeasor. No ruling was obtained on the motion for severance.

In the motion, Delta also argued that punitive damages had previously been assessed against it based on the same conduct as involved in the present case, and imposing punitive damages again would constitute a multiple award arising from a single course of conduct. Delta argued its right to due process of law would thus be violated, as would the prohibition against double jeopardy, and the prohibition against excessive fines.

Delta moved to dismiss the complaint due to failure to exhaust an administrative remedy available under regulations promulgated by the Secretary of Education. The motion to dismiss based on exhaustion of administrative remedies was later renewed as a motion for directed verdict at the close of the students' case. The motion was denied.

The consolidated claims proceeded to trial. The students testified they learned of Delta's medical office assistant program through television and newspaper ads. They became interested as the ads said a Delta student would be "job ready" in seven months, and financial aid and job placement were available.

The students visited the campus where they spoke with Delta admissions representatives. Victoria Hicks testified an admissions representative told her a medical office assistant position would be waiting for her after graduation from the program. Others were told they would be guaranteed jobs as medical office assistants upon graduation.

There was evidence that Delta did not help any of the students find employment as medical office assistants. An employment manager at Baptist Medical Systems stated there was no position in the Baptist system called "medical office assistant." Contrary to the promises made by the admissions representatives, none of the students received jobs as medical office assistants.

After the students presented their cases, Delta moved for a

directed verdict with respect to the punitive damages claims. Delta again argued that the consolidated trial of several claims requesting punitive damages placed undue influence on the need to punish, and therefore was prejudicial. The Court recognized the problem but refused to grant a directed verdict. Hoping to alleviate any possible prejudice, the Court gave a single punitive damages instruction instead of six. The punitive damages award, if any, would be shared among the plaintiffs.

As part of its motion for directed verdict, Delta reiterated the argument that the cumulative effect of multiple punitive damages awards arising from a single course of conduct violated the United States and Arkansas Constitutions. The jury awarded varying amounts of compensatory damages to the students, totaling approximately $20,000, and $30,000 punitive damages.

### 1. *Multiple claims of punitive damages*

In support of the argument that the Trial Court should have directed a verdict on the issue of punitive damages, Delta relies on *Missouri Pac. R. R. Co.* v. *Arkansas Sheriff's Boys' Ranch, supra.* There, sixteen plaintiffs filed four separate complaints requesting compensatory and punitive damages against the Railroad. The actions were consolidated over the Railroad's objection. The jury returned a punitive damages award of $800,000. The Railroad argued the Trial Court erred by consolidating the cases, and we agreed stating "[t]he consolidation of four cases placed undue emphasis on the need to penalize the tortfeasor." The *MoPac* holding was premised upon the prejudice which can result when several claims requesting punitive damages are consolidated in one trial.

■ One of the purposes of imposing punitive damages is to punish the wrongdoer. *Viking Ins. Co.* v. *Jester*, 310 Ark. 317, 836 S.W.2d 371 (1992); *Alpha Zeta Chapter of PI Kappa Alpha Fraternity* v. *Sullivan*, 293 Ark. 576, 740 S.W.2d 127 (1987). Unfair prejudice, in this context, will occur if a defendant is punished more than once for the same act or conduct. When several plaintiffs requesting punitive damages are joined in one lawsuit, a defendant runs the risk that he or she will be multiply punished for the same act or conduct. This is especially true in light of the fact that for several plaintiffs to be joined in one

lawsuit, they must,

> [a]ssert any right to relief jointly, severally or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. Ark. R. Civ. P. 20(a) (1992).

■ We cannot determine from the *MoPac* opinion whether the Railroad was being multiply punished, through the imposition of punitive damages, for one course of conduct. We do know, however, that Delta was not being punished for a single wrongful act. The testimony indicates Delta engaged in several distinct acts of misrepresentation perpetrated upon different plaintiffs. In these circumstances, we cannot see how Delta has been unfairly prejudiced.

### 2. Due process

■ Delta asserts imposing punitive damages in this case constitutes a multiple award of punitive damages arising from a single course of conduct and violates its right to due process of law. Other than very general citations having to do with due process of law and punitive damages, Delta has cited *In re Northern District of California Dalkon Shield IUD Products Liability Litigation*, 526 F. Supp. 887 (N.D. Cal. 1981), *vacated and remanded*, 693 F.2d 847 (9th Cir. 1982), *cert. denied*, 459 U.S. 1171 (1983). The decision of the District Court, which was vacated and remanded by the United States Court of Appeals for the Ninth Circuit, recognized a defendant has a due process right to be protected against unlimited multiple punishment for the *same act*. (emphasis added). The only other more direct citation is to a dissenting opinion by Judge Heaney in *In re Federal Skywalk Cases*, 680 F.2d 1175, 1188 (8th Cir.) (Heaney J., dissenting), *cert. denied, Stover* v. *Rau*, 459 U.S. 988 (1982). The dissenting opinion expressed essentially the same rationale as the vacated decision. It does not apply here. Delta was not punished more than once for the "same act or conduct." The evidence supports the conclusion that Delta engaged in separate acts of misrepresentation.

### 3. Double jeopardy

█ Delta next contends the punitive damages award violates the double jeopardy clause of the United States Constitution. U.S. Const. amend. 5. The double jeopardy clause does not apply to civil actions. *Reed* v. *Alcoholic Beverage Control Div.*, 295 Ark. 9, 746 S.W.2d 368 (1988); *see also Baggett* v. *State*, 15 Ark. App. 113, 690 S.W.2d 362 (1985). The United States Supreme Court has held double jeopardy encompasses only the risk inherent in proceedings that are essentially criminal. *Breed* v. *Jones*, 421 U.S. 519 (1975). A claim for punitive damages is based upon a private wrong and is clearly distinguishable from a criminal prosecution brought on behalf of the public. Accordingly, a civil action for punitive damages cannot infringe on a party's constitutional right to be free from double jeopardy. *E.F. Hutton & Co., Inc.* v. *Anderson*, 42 Colo. App. 497, 596 P.2d 413 (1979); *Tuttle* v. *Raymond*, 494 A.2d 1353 (Me. 1985); *Svejcara* v. *Whitman*, 82 N.M. 739, 487 P.2d 167 (1971).

### 4. Excessive fines

Delta argues the punitive damages award violates the excessive fines prohibition found in Ark. Const. art. 2, § 9. The full text of Article 2, § 9, states, "[e]xcessive bail shall not be required, nor shall excessive fines be imposed; nor shall cruel or unusual punishment be inflicted; nor witnesses be unreasonably detained." The prohibition has been applied to penalties levied by the State. *See, e.g., Walton* v. *Scott, Comm'r*, 247 Ark. 268, 445 S.W.2d 97 (1969) (penalty for failure to pay cigarette tax held not excessive); *Baker* v. *State*, 199 Ark. 1005, 137 S.W.2d 938 (1940) (fine imposed for crime of libel held not excessive); *Payne* v. *White*, 1 Ark. App. 271, 614 S.W.2d 684 (1981) (fine imposed for contempt held not excessive). We know of no case where it has been applied to a civil remedy.

The United States Supreme Court, in *Browning-Ferris Indus.* v. *Kelco Disposal, Inc.*, 492 U.S. 257 (1989), held the excessive fines clause of the Eighth Amendment inapplicable to a civil award of punitive damages. The Court relied on the precise language of the Amendment, which is virtually identical to the language of our Article 2, § 9, and the legislative history surrounding its adoption. The Court stated:

Given that the Amendment is addressed to bail, fines, and punishment, our cases long have understood it to apply primarily, and perhaps exclusively, to criminal prosecutions and punishment.

\* \* \*

Simply put, the primary focus of the Eighth Amendment was the potential for governmental abuse of its "prosecutorial" power, not concern with the extent or purposes of civil damages.

■ The *Browning-Ferris* case presents persuasive reasoning in support of our conclusion that a civil punitive damages award does not fall within the constitutional prohibition against excessive fines in Article 2, § 9.

### 5. Exhaustion of remedies

Delta's last argument is that the Trial Court erred by not dismissing the students' claims because they failed to exhaust a federal administrative remedy provided by the Secretary of Education. It was undisputed that the students received federal loans or grants which enabled them to enroll in the Delta program.

In 1965 Congress passed the Higher Education Assistance Act with the purpose of assisting eligible students in postsecondary education in paying tuition. 20 U.S.C. § 1070 (1989). The federal assistance comes in the form of loans and grants to students. Congress has explicitly delegated to the Secretary of Education the authority to carry out all the programs of the Act. 20 U.S.C. § 1070(b) (1989).

Pursuant to this grant of authority, the Secretary promulgated several general regulations applicable to institutions participating in a federal student financial assistance program. 34 C.F.R. § 668.1 (1991). Subpart F of the regulations establishes standards and rules by which the Secretary may initiate a proceeding against an otherwise eligible institution for any substantial misrepresentation made by that institution regarding the nature of its educational program, its financial charges, or the employability of its graduates. § 668.71(a). Misrepresentation by an institution regarding the employability of its graduates in-

cludes "false or misleading statements that the institution maintains a placement service or will secure or assist its graduates to obtain employment, unless it provides the student with a clear and accurate description of the extent and nature of the service or assistance." § 668.74(b).

A student having a misrepresentation claim against an institution may file a complaint with the Secretary. If the official finds the complaint alleges a substantial misrepresentation, he or she may initiate action either to fine the institution, or limit, suspend, or terminate the institution's eligibility to participate in the federal programs. § 668.75(c)(1). The official may also "take other appropriate action" against the institution. § 668.75(c)(2).

The Secretary may impose a fine of up to $25,000 per violation of the regulations. § 668.84(2). After a final decision by an administrative law judge, the Secretary may require an offending institution to pay any improperly received funds to the Secretary or designated recipients. § 668.95(b).

The doctrine of exhaustion of administrative remedies provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. *Myers* v. *Bethlehem Shipbuilding Corp.*, 303 U.S. 41 (1938). The doctrine is subject to numerous exceptions, *e.g.*, exhaustion is not required if no genuine opportunity for adequate relief exists. *Barr* v. *Arkansas Blue Cross & Blue Shield, Inc.*, 297 Ark. 262, 761 S.W.2d 174 (1988). Inadequate administrative remedies need not be exhausted. *Coit Independence Joint Venture* v. *Federal Sav. and Loan Ins. Corp.*, 489 U.S. 561 (1989).

Under the regulations, the plaintiffs could have filed a misrepresentation claim against Delta with the Secretary. If the Secretary determined the complaint alleged a substantial misrepresentation, he or she could "take appropriate action," including fining Delta or suspending Delta's eligibility to participate in the federal programs.

While the regulations may give the Secretary authority to order a school like Delta to refund to students or to the government monies paid in tuition, the administrative remedy remains inadequate. The students claimed entitlement to conse-

quential damages, including lost wages and out-of-pocket expenses, for which there is no provision under the regulations.

Affirmed.

DUDLEY, J., dissents on the basis of *Missouri Pac. R. R. Co.* v. *Arkansas Sheriff's Boys' Ranch*, 280 Ark. 53, 655 S.W.2d 389 (1983).